SCHOTT, Judge.
At issue here is the validity of certain guidelines adopted by the Board of Trustees of the Firefighters’ Pension and Relief Fund on July 13, 1977 (copy of which follows this opinion as an appendix) and resolutions adopted by the Board in the implementation of those guidelines on September 29 and October 12, 1977.
For sometime prior to the adoption of the guidelines the Board had been confronted with the question of the eligibility for membership in the pension plan of certain employees of the Fire Department whose duties did not include participation in the actual fighting of fires. When the matter first arose the issue involved a considerable number of personnel who were assigned to the Fire Prevention and Fire Alarm Divisions, but by the time the case was tried it was conceded by plaintiffs that these individuals were not eligible. The issue narrowed down to the eligibility of those individuals who had been engaged in fire fighting in the past but who have been transferred to positions in the Department which do not entail fire fighting, such as in the repair shop for the small tools of the department, a public relations position, and other administrative positions.
In the resolutions of September 29 and October 12, adopted pursuant to guidelines 4 and 5, fifteen individuals were declared as not engaged in actively extinguishing fires. Four of them were notified that unless they transferred to such duties within thirty days they would forfeit their participation in the fund. The remaining eleven were given six months in which to transfer to sick leave status or retire under the pension system because of permanent disability or, in default of that to forfeit all further participation in the fund.
In adopting the guidelines and resolutions defendants relied on LSA-R.S. 33:2101 which contains the following definition:
“ . . . The word ‘firefighters’ as designated in this Subpart is defined as any individual employed by the fire department of the city of New Orleans who is actively engaged in the extinguishing of fires.”
This suit was brought by the City of New Orleans and various officials of the City against the Board and the individual members thereof for injunctive and declaratory relief. The following is a summary of the position taken by plaintiffs:
The Superintendent of the Fire Department is vested with exclusive authority over the employees of the department by the Home Rule Charter of the City. Included in his authority is the right to classify an employee as one who is actively engaged in the extinguishment of fires along with eligibility for membership in the pension plan. Thus, the Board’s duty to include in the plan an employee so classified by the Superintendent as eligible is mandatory and ministerial.
The guidelines “represent an unconstitutional and unlawful usurpation by the Board of Trustees of management prerogatives reserved to the superintendent” by the Home Rule Charter and are inconsistent with the intent of the Pension Plan law. Alternatively, the law itself is unconstitutional. Defendants’ actions constituted an unlawful intrusion into and usurpation of management prerogatives, created a disruptive influence on the administration of the fire department, and produced a damaging impact on the morale and efficiency of department employees who are threatened by the Board with imminent forfeiture of their participation in the pension plan.
Thus, the guidelines and resolutions present a clear and present danger to the efficient administration of the department by virtue of the imminent transfer of certain key employees from sensitive and essential positions of management responsi *884 bilities and duties to other positions in the department, or to sick leave or retirement, leaving their present positions unmanned or to be filled by unqualified persons to the detriment of the public health, safety and welfare. Furthermore the department’s ability to fill these positions with qualified persons in the future will be hampered.
The case was tried on a stipulation of all pertinent facts. The individuals singled out by the Board have all been firefighters “actively engaged in the extinguishing of fires” for varying periods of time, and all were originally covered without question by the pension fund but are now occupying various administrative positions under the appointment of the Superintendent, which preclude or exempt them from participating in the “Extinguishing of fires.” Some were transferred to their present duties because of injury or sickness so that guideline No. 4 was applicable to their situation, while others were in good health and affected by guideline No. 5.
At the hearing the parties stipulated into evidence the Rules and Regulations Manual of the Fire Department and the Civil Service Fire Suppression job classifications which include positions occupied by all of the fifteen targeted individuals. In brief to this court plaintiffs argue that the Board’s action in removing the individuals from coverage in the pension plan because they no longer fit the definition of firefighters under R.S. 33:2101 was an infringement on the constitutional prerogatives of the Civil Service Commission which classified these individuals as firefighters even though they are not presently called upon for active engagement in the extinguishing of fires.
Defendants filed peremptory exceptions of no cause of action and no right of action which were referred to the merits by the trial court, and after a hearing which consisted of some testimony by the Superintendent of the Fire Department and the introduction of the various documents mentioned, and others, the trial court rendered judgment in favor of plaintiffs, declaring the guidelines and the two subject resolutions null and void and granting a permanent injunction against defendants from implementing the guidelines and resolutions. From this judgment defendants have appealed.
In his reasons for judgment the trial judge stated that the issue was:
“To whom has the legislature delegated the authority to interpret its statutory definition of ‘firefighter’ and to promulgate guidelines that set standards for determining who is included within that statutory class and is thus eligible to receive pension benefits from the ‘Firefighters’ Pension & Relief Fund?”
After discussing the statutory and factual background of the case, as has already been discussed herein, the court stated:
“The Board does not contend that the individuals could not again become members of the Fund if they, at a future time, do work of a nature which would give them an opportunity to actually be engaged in the extinguishment of fires. In effect, what the Board is doing is suspending these employees from the operation and the benefits of the Firefighters’ Pension and Relief Fund during that period of time in which their occupation does not include some activity which would engage them in the extinguishment of fires.”
The court further noted that R.S. 33:2103 provides that “[t]he Board shall assess each member of the Fire Department not less than 5% of his salary” and, beginning July 1, 1973, “the Board shall assess each member of the Fire Department not less than 6% of his salary;” and under the same section it was provided that the Board “shall hear and decide applications for relief, pensions and death benefits under this subpart.” The court noted that nowhere in the pension law was the Board granted the power to determine eligibility for membership in the fund, that each “member of the Fire Department” was to be assessed as opposed to the word “Firefighters” used in R.S. 33:2101, and, finally, the phrase, “member of the Fire Department,” and the word, “firefighter,” are both used throughout the statutes. The court then concluded:
*885 “It is apparent from the sub-part ‘D’ that ‘each member of the fire department’ is to be (and undoubtedly is being) assessed. It therefore appears clear that it was not the intention of the Legislature to have ‘each member' assessed while one or more of such members would not be eligible to join the fund because he was not ‘actively engaged in the extinguishing of fires.’ For the reasons herein set forth. The Court is of the opinion that the Board of Trustees was, and is, without the right to attempt to determine which members of the Fire Department are eligible to become members of the pension fund by determining whether or not they are actively engaged in the extinguishment of fires, and hence the Board was without right to adopt the guidelines which it did which enabled them to make such determination. Accordingly, the Court has no alternative except to grant the relief for which plaintiffs have prayed.”
In analyzing the reasons of the trial court for judgment, it appears that he was largely influenced by his understanding that every member of the Fire Department was being assessed for contributions to the fund but defendants would extend benefits only to certain employees who were “firefighters” within the definition of § 2101. This impression was erroneous. Under the Civil Service job classifications there are four divisions of employees, namely, Fire Suppression, Fire Prevention, Fire Alarm and Fire Administration. Only those in the Fire Suppression Division are assessed contributions to the pension fund. Those in the other three divisions do not make contributions to this fund. There is no dispute about their eligibility for membership in the fund and it is understood that they are covered by the general city pension fund, as are other classified employees of the City of New Orleans in other departments. Plaintiffs admit that the trial court erred in adopting this reason for his judgment but take the following position:
“This court should therefore affirm the judgment of the lower court which declared the pension coverage eligibility rules and regulations null and void as being beyond the statutory authority of the Board to adopt and which permanently enjoined the Board from implementing those rules and regulations and from implementing the series of pension coverage forfeiture resolutions directed to the fifteen targeted fire suppression employees. However, in affirming that trial court judgment this court should do so for different reasons in that this court should recognize that the pension system was created and exists only for the benefit of employees assigned to fire suppression classifications within the City Civil Service System and that as to that group of fire department employees the Legislature has not delegated authority to anyone to determine pension coverage eligibility.”
In determining the validity of defendant’s guidelines and resolutions, we must first consider if they are consistent with the statute which created the Board, namely, Act 120 of 1969 as amended, R.S. 33:2101 to 2120. The very first sentence of § 2101 provides:
“A pension and relief fund for firefighters in the City of New Orleans is created.
And the last sentence of § 2101 defines a firefighter as “any individual employed by the fire department of the city of New Orleans, who is actively engaged in the extinguishing of fires.”
Unfortunately, as noted by the trial judge the phrase, “member of the Fire Department,” is used in various places throughout the act, as well as the phrase “employee of the Fire Department.” For instance, § 2103 provides that the Board shall manage the fund which is “for the relief or pensioning of disabled, superannuated and retired members of the fire department . . . .” This section provides that should an “employee who was employed prior to January 1, 1968, leave the employment of the city fire department” 80% of his accumulated contribution shall be paid to him. § 2103.2 contains a companion provision for “the employee” who *886 leaves “the employment of the city fire department at any time” to receive all contributions he paid in after December 31, 1967. However, both of these sections provide that the withdrawing employee shall forfeit all credits for service in the system. § 2103.1 provides for “emergency or supernumerary firefighters.” §§ 2113 and 2113.1 providing for disability payments refer to “any member of the fire department.” § 2114 providing for death benefits also refers to “any member of the fire department” as entitled to benefits but also uses the word “firefighter” in various places throughout the section. § 2117 provides for the retirement of “[a]ny member who has performed faithful service in the fire department for twenty years or more,” and for retirement benefits for the member who elects to retire “at any time after twenty years of service as a member of the fire department.” Subsection C of § 2117 provides that “any member or employee of the fire department covered by this Subpart shall be mandatorily retired upon attaining his or her seventieth birthday”. § 2117.3 provides that:
“Any firefighter who enters the employ of the fire department, . . . and who is a contributing member of this system, may retire . . .
Act 120 of 1969 which amended and reenacted the entire Subpart under discussion used the word “firefighter” for the first time. Previously the act used the words fireman or firemen, for which there was no statutory definition as there presently is for firefighters.
The pension and relief fund was originally established by Act 43 of 1902, at a time when the Fire Department was undoubtedly a simple agency in which all members engaged in the extinguishment of fires. As the population of the city grew and society became more complex the fire department also expanded and required many backup administrative and other personnel who would not fight fires. The pension plan administered by defendants is more liberal and provides greater benefits to its members than the regular pension plan available to city employees in general. The obvious purpose for the distinction is to compensate those who risk life and limb in the hazardous duty of actually fighting fires. This is the reason why the city does not even contest the exclusion from the fund of those employees who were in the three divisions of the Fire Department other than the Fire Suppression Division. However, with respect to those in the Fire Suppression Division, plaintiffs would disregard the actual duties being performed by its members and have them continue to build up these liberal retirement and pension benefits even though they no longer expose themselves to the hazards of fire fighting, and irrespective of the length of time in which they are removed from these duties. Not only would this provide such individuals with an unfair advantage over all other employees of the Fire Department but it would thwart the clear intention of the legislature in the enactment of the plan.
The act itself is silent with respect to the particular problem at hand, namely, that of a firefighter covered under the plan who has been transferred to non-firefighting duties and the transfer’s effect on his membership. However, § 2103 provides as follows:
“The board of trustees shall have exclusive control and management of the fund . the board shall appoint committees of its members as needed, including a finance committee and a relief committee, and make necessary rules and regulations for its government in the discharge of its duties. It shall hear and decide applications for relief, pensions, and death benefits under this subpart. . . ”
(Emphasis supplied)
The Board’s primary duty is to administer the law in accordance with the legislature’s intent and since that intent was to provide this special plan only to those who are active firefighters the exclusion of those who have left such duties was authorized by § 2103.
The Board has not taken the position that these individuals have withdrawn from the plan with the corresponding forfeiture of *887 credits as provided for in §§ 2103 and 2103.-2, but has simply resolved that these individuals’ rights in the plan are suspended until such time as they return to those duties which are rewarded by plan membership.
We note from the joint stipulation entered into between the parties that there is a wide variation among the individuals who were targeted by the Board as to the length of service, and we do not propose to make any suggestion as to what effect our judgment may have on benefits due those individuals. They are not parties to this suit, and in the event of disagreement as to the effect of this suspension on their rights, a resolution will be required on an individual case basis in accordance with § 2103 which provides that the Board shall hear and decide applications for relief pensions and death benefits on an individual basis with the right of judicial review recognized by the statute.
Our conclusion that the action taken by defendants was authorized by and in furtherance of the pension law, brings us to a consideration of the plaintiffs’ argument that the pension law itself is unconstitutional because it conflicts with the prerogatives of the Superintendent of the Fire Department and the Civil Service Commission of the City.
The action taken by defendants had no effect whatsoever on the Superintendent’s authority to assign and transfer personnel. Defendants’ action simply informs those who have been transferred from active firefighting that they will no longer accumulate benefits under the plan administered by defendants until and unless they return to active firefighting. Defendants have no interest whatsoever in what duties are undertaken by their members but they do have an interest and indeed an obligation to prevent those from accumulating additional benefits in a plan while they are not performing the hazardous duties of a firefighter when the plan is intended exclusively for such employees of the Fire Department. We can well appreciate plaintiffs’ concern that a firefighter who has an opportunity to take an assignment by the Superintendent to a position which may be more challenging, more intellectually satisfying and stimulating, more prestigious and involving greater responsibilities than that of an active firefighter, may hesitate to accept such an assignment in view of the adverse effect it has on his continuing to accumulate pension rights under the liberal pension plan of defendant. But we cannot say that such an individual would necessarily be deterred by this small loss for a temporary period, during which he will be performing a job which is perhaps more satisfying to him, and surely less hazardous. If indeed this does have an adverse effect on the superintendent’s management prerogatives, the problem addresses itself to the legislature for amendment of the pension law.
As to the Civil Service Commission, membership in the pension and relief fund is not a factor over which it has jurisdiction. Whatever classifications the Civil Service Commission makes, such as membership in the Fire Suppression Division, has no meaning whatsoever with respect to eligibility for membership in a pension plan which was adopted by the legislature for the benefit of a particular group of employees. Plaintiffs take the position that the actions taken by defendants interfere with the jurisdiction of the Civil Service Commission but it can more properly be said that if the Civil Service Commission were to make a paper classification of an individual as a firefighter when that individual is not actively engaged in the extinguishing of fires, for the purpose of making that individual eligible for membership in the pension plan this would constitute interference with the jurisdiction of the Pension Board.
Accordingly, the judgment appealed from is reversed and set aside and there is judgment in favor of defendants, dismissing plaintiffs’ suit at their cost.
REVERSED AND RENDERED.
APPENDIX
Guide lines for eligibility in Fire Fighter’s Pension System.—
1) It is hereby adopted as the official policy of this New Orleans Fire Fighter’s *888 Pension and Relief Fund that the legislative definition — “The word ‘firefighters’ as designated in this Subpart is defined as any individual employed by the fire department of the city of New Orleans who is actively engaged in the extinguishing of fires.” — shall be henceforth applied to all members, on an individual basis according to the duties being performed by any member at a given time, within the guide lines herein adopted.
2) Members applying for eligibility who are not presently covered within the provisions of the system shall have their eligibility determined, according to individual duties, by a majority vote of the members of the Pension Board.
3) Members presently covered within the provisions of the system, whose individual duties may not qualify them for continued coverage, shall be screened by the Pension Board and their continued eligibility shall be determined by a majority vote of the members of the Pension Board.
4) Upon implementation of these guide lines, members presently covered under the provisions of the system, whose duties conflict with the legislative definition of eligibility, by reason of injury or illness are hereby granted a period of six months of continued coverage, pending a determination of the member’s expected length of incapacity to resume duties which conform with the eligibility definition. The Board may extend the periods of continued coverage, not to exceed increments of six months in any given case, if further medical evaluation is needed or if the member in question needs additional time for recuperative reasons.
5) Upon implementation of these guide lines, members presently covered under the provisions of the system, whose duties conflict with the legislative definition of eligibility, for no apparent reason of injury or illness, shall be granted a period of thirty days within which they must conform with the eligibility definition or forfeit the right to continue to accumulate benefits under the system.
6) The Pension Board hereby asserts their authority to have any member medically evaluated at any time to determine the prevailing condition of the member’s ability to conform with the legislative eligibility definition while being assigned to non-conforming duties.
7) To accommodate the emergency needs of the Fire Department, it is hereby provided that members in good health, who could otherwise perform duties which conform with the legislative definition of eligibility, shall be allowed continued coverage within the system while performing non-conforming duties for an accumulative period of time not to exceed thirty days within any calendar year.
8) Members voluntarily performing duties which do not meet the requirements of the eligibility definition or of these guide lines, shall be cautioned by the Pension Board that they are placing their right to continue to accumulate retirement benefits in jeopardy. If such member refuses to comply within ten days, he shall be given an additional ten days to comply at which time action shall be taken to interrupt his coverage in the system.
9) Members involuntarily performing duties which do not meet the requirements of the eligibility definition or of these guide lines, should be nevertheless cautioned by the Pension Board that their continued coverage is being jeopardized, and that they should take immediate steps to correct their situation. If such corrective steps are taken by the member or his representatives which leads, or could lead, to litigation, no loss of coverage shall be assessed against the member during his pursuit of a legal remedy.
10)The Pension Board reserves the right to pass judgment, on a case by case basis, regarding any situation which may de *889 velop that is not specifically covered by these guide lines.