831 So.2d 941 (2002)
Michael LAFLEUR, Manuel Curry and Raymond Kelly, Individually and on Behalf of the Class of All Police Officers Identified Herein
v.
The CITY OF NEW ORLEANS.
No. 2001-C-3224.
Supreme Court of Louisiana.
December 4, 2002.
Mavis S. Early, Charles L. Rice, Jr., Annabelle H. Walker, Franz L. Zibilich, New Orleans, Counsel for Applicant.
Sidney M. Bach, BACH & WASSERMAN, Louis B. Merhige, Gerry Wasserman, Metairie, Harry J. Boyer, Jr., Frank G. DeSalvo, New Orleans, Counsel for Respondent.
*942 KIMBALL, Justice.
We granted certiorari to determine whether the customary practice within the New Orleans Police Department ("NOPD") of allowing officers to "run out" their accrued sick leave prior to retirement constituted an enforceable contract such that plaintiffs who were not allowed to run out their sick leave would be entitled to compensation for their accrued sick leave. Since the custom of "running out" sick leave violated city civil service rules, we find that a legally enforceable contract was not formed. Accordingly, the court of appeal's judgment to the contrary is reversed.

Facts and Procedural History
This case involves the legal question of the manner in which a member of the NOPD is to be compensated upon separation of service from the NOPD for sick leave earned between July 10, 1970 and July 10, 1980. On May 21, 1980, plaintiffs, a class of past and present police officers of the NOPD, commenced this suit against the City of New Orleans ("City") alleging divestiture of vested property rights in the form of accumulated sick leave benefits. As the case evolved, plaintiffs' contentions focused on an unwritten, largely unofficial, practice in which a police officer who was ready to retire took the balance of his sick leave without reporting to work and received his regular paycheck until his accumulated sick leave was exhausted. In effect, these retiring officers who "ran out" their sick leave prior to retirement were paid for their accumulated sick leave on a one-to-one basis.
In the early seventies, the Chief Administrative Officer for the City of New Orleans ("CAO") issued several policy memoranda that authorized the conversion of accrued sick leave by a retiring city employee to either credit towards retirement or a lump sum cash payment at a one day's pay for every five days of sick leave. Although some officers were still allowed to "run out" their sick leave after the issuance of this memoranda, many retiring officers were limited to the five-to-one payout or retirement credit for conversion of their accumulated sick leave. Then, on July 10, 1980, the Civil Service Commission for the City of New Orleans ("Commission") adopted a new rule governing the conversion of accumulated unused sick leave upon separation from employment. This rule instituted a formula by which city employees were paid a lump sum for accrued sick leave according to a ratio, similar to the city's five-to-one policy but on a graduated scale. With the adoption of this new rule in 1980, the conversion of any accumulated sick leave prior to retirement was governed in accordance with its regulations and plaintiffs were not allowed to take advantage of the practice of "running out" their sick leave at retirement.
In the instant suit, plaintiffs who did not "run out" their sick leave and those who retired after the passage of the new city civil service rule in 1980 claimed breach of a contract they had with the City and, further, deprivation of vested property rights in sick leave earned during the period between July 10, 1970 and July 10, 1980. Plaintiffs claim they are entitled to have the sick leave they earned during this period converted at a rate of one-to-one for purposes of any lump sum payment.
After numerous proceedings not directly related to the issue presented, trial on liability only began on July 30, 1997. At trial, plaintiff testified that during recruiting or training they were told of the policy of "running out" sick leave at retirement and were encouraged to preserve their sick leave so that they could take advantage of this practice upon retirement. Plaintiffs further claimed that supervisors within the police department were fully *943 aware of this practice. In fact, each day a retiring officer was absent while "running out" accumulated sick leave was recorded in the beat roll book. In this case, the trial court found that 13% of the police officers who retired between 1976 and 1978 had "run out" their sick leave. These officers were not disciplined in any way.
After considering all the evidence and testimony presented, the trial court rendered final judgment on March 31, 1998, finding that the City formed a valid and enforceable contract with the officers of the NOPD by recognizing a well-known and routinely followed custom over a lengthy period of time. The trial court ruled that because plaintiffs claim they are being deprived of a vested property right, the civil service rule could not be applied to nullify the contract. Based on its conclusion that the officers had a legally enforceable contract and were deprived of a vested property right to paid sick leave, the trial court ordered the City to compensate the officers at the time of their retirement, one day's pay for each day of sick leave that they accumulated between July 10, 1970 and July 10, 1980, with the City receiving credit for any partial sums already paid.
On appeal, the fourth circuit found the trial court's determination that a valid contract was formed was reasonable and not manifestly erroneous. LaFleur v. City of New Orleans, 00-2642 (La.App. 4 Cir. 11/07/01), 800 So.2d 1112. However, the court reversed that portion of the trial court's judgment granting the City credit for sick leave already paid to any retired member of the class, because the City did not raise such payment as an affirmative defense in its pleadings, nor did it present any proof of such payment at trial.
We granted certiorari to consider whether, upon separation of service from the NOPD, plaintiffs are entitled to be compensated for unused sick leave earned between July 10, 1970 and July 10, 1980 on a one-to-one basis. LaFleur v. City of New Orleans, 01-3224 (La.3/22/02), 811 So.2d 941.

Discussion
The New Orleans Civil Service Commission was created by Article XIV, Section 15 of the 1921 Louisiana Constitution and continued by Article X, Section 4 of the 1974 Louisiana Constitution. Generally, officers of the New Orleans Police Department are included within the classified city civil service. Walters v. Department of Police of City of New Orleans, 454 So.2d 106, 112 (La.1984) ("Because the electors of New Orleans failed to exclude its paid firemen and municipal policemen [from the 1974 constitutional provisions that created the city civil service] by an election called within one year after the effective date of the constitution, these employees are included in the classified city civil service."). Our Constitution vests the Commission "with broad and general rulemaking and subpoena powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment ... employment conditions, compensation and disbursements to employees...." La. Const. art. 10, § 10(A)(1).[1] A city civil service commission has the exclusive power to adopt rules regulating the classified service in the areas specifically enumerated in Section 10(A)(1), and the city governing *944 authority cannot constitutionally infringe on the commission's exercise of this power. New Orleans Firefighters Ass'n Local 632, AFL-CIO v. City of New Orleans, 590 So.2d 1172, 1175 (La.1991). See also Barnett v. Develle, 289 So.2d 129 (La.1974). Accordingly, where the Commission has properly established a specific rule, neither the State nor the City can approve or implement a contradictory rule. Id.
At all times pertinent to this case, the New Orleans Civil Service Rules defined "sick leave" as:
absence from duty because of the employee's (1) illness or injury, or (2) quarantine by health authorities. Sick leave shall also be granted for absence because of death in the immediate family of employee. New Orleans City Civil Service Rule I(62).

Furthermore, Section 2.2 of Rule VII governing the use of sick leave provided in pertinent part:
An employee who has taken sick leave shall file with his or her appointing authority a letter stating the cause of the absence from work, provided that:
(a) If the amount of sick leave taken exceeds six (6) consecutive working days, a registered physician must certify to the nature of the illness or injury and the necessity for absence after the sixth consecutive working day.
(b) If there is a reasonable doubt of the validity of the employee's claim for consecutive sick leave of six (6) working days or less, the appointing authority may require a statement from a registered physician or some other acceptable proof that the employee was ill, provided that the employee has been previously notified of the policies and conditions under which a physician's certificate will be required for absence of less than six (6) consecutive working days.
(c) When an appointing authority has determined that an employee has charged an absence against sick leave although no actual illness or injury as defined in Rule I occurred, the appointing authority must deduct the value of the absent time from the employee's accrued annual leave or pay and may also take disciplinary action as deemed appropriate under the circumstances. New Orleans City Civil Service Rule VIII.

In July of 1980, the Commission adopted Rule 2.7 that provided employees with an option to convert unused sick leave accumulated at the time of separation from service to cash according to a prescribed formula.[2] All parties agree that this rule *945 is applicable to and may be used to determine the conversion of sick leave benefits for all sick leave earned after July 10, 1980.
Prior to 1980, the City's civil service regulations did not specifically provide for payment of accrued unused sick leave. Between the dates at issue in this case, July 10, 1970 through July 10, 1980, a retiring employee was limited to converting his sick leave to retirement credits pursuant to the provisions of Section 55-29 of the Code of the City of New Orleans. Beginning in 1971, however, memoranda issued by the CAO purported to allow for the first time a cash payout under a particular formula to certain employees upon their retirement, death, or resignation with proper notice. These memoranda were thought by the City to provide applicable policy for its employees. Although the Commission has the exclusive authority to promulgate policy governing compensation of classified employees, testimony of the personnel chief for the Commission reveals that in the mid-seventies, when the CAO published a policy memorandum concerning compensation, he had to have at least the tacit approval of the Commission. Further evidence of the Commission's tacit approval of the CAO's policy concerning conversion of sick leave prior to 1980 can be found in the Employee Manual for the Employees of the City of New Orleans, published by the New Orleans Department of Civil Service. This document contained a policy consistent with that expressed by the CAO policy memoranda as more fully detailed below. Thus, the Commission's publication of a consistent policy before the institution of the official rule in 1980 suggests that the Commission had tacitly approved of the policy provided by the CAO.
Beginning in October of 1971, the CAO issued a memorandum authorizing the cash conversion of sick leave earned by an employee upon retirement, death, or resignation at a rate of five days accumulated sick leave for one day's pay. CAO Policy Memorandum No. 86 (10/20/1971). The conversion of sick leave provided for therein entails a lump sum payment to the separated employee. The memorandum, however, authorized the conversion only for those employees who had accumulated at least fifty days of sick leave at the date of conversion.[3] The memorandum recognized that payment for the converted sick leave must be requested by the employee since the employee could also chose to convert his sick leave to retirement credits under applicable provisions of the Code of the City of New Orleans. In March 1973, the CAO released a memorandum republishing the accounting procedures for the conversion of sick leave, including the payment rate of five days of sick leave for one day's pay and the minimum requirement of 50 days accumulated sick days. CAO Policy Memorandum No. 15 Revised (3/12/1973). Finally, in 1982, the CAO issued a memorandum expressly prohibiting city employees from exhausting any form of leave before separating from city employment. CAO Policy Memorandum No. 193 (6/23/1982).
According to the above-mentioned rules and memoranda, prior to 1971, City authorities made no provision for classified employees of the City of New Orleans to *946 receive compensation for accumulated sick leave upon separation of service. Therefore, the record indicates that the only rule applicable to the actual usage of sick leave was the Commission's rule providing that sick leave could only be taken when an employee was ill or injured. Upon retirement, a retiree could choose to convert his sick leave to retirement credits pursuant to the Code of the City of New Orleans; however, he could not receive a cash payout for unused days or use his accumulated sick leave for reasons other than illness or injury without violating applicable rules. Thereafter, from 1971 until the adoption of the 1980 city civil service rule providing a formula for cash payment, New Orleans police officers had only two available options. A retiring officer could elect to have his accumulated sick leave converted to membership service (i.e. retirement credit) in the Police Pension Fund for the City of New Orleans pursuant applicable provisions. Alternatively, an officer could opt to receive a lump sum cash payment for accumulated sick leave at a five-to-one ratio according to the 1971 CAO policy memoranda. Thus, other than the conversion of sick leave to retirement credit or a five-to-one cash payout, the actual use of sick leave by any classified city employee was governed by the general city civil service rule requiring illness or injury for the use of sick leave. Accordingly, an employee must have actually incurred an illness or injury in order to utilize sick leave, as well as providing a doctor's certification of the illness or injury if the amount of sick leave taken exceeded six consecutive working days. New Orleans Civil Service Rules 2.1 & 2.2.
Nevertheless, plaintiffs contend that the well-known practice of allowing certain persons to "run out" their accumulated sick leave prior to retirement in contravention of positive city civil service rules created in their favor a contract such that leave earned during the time period in which the practice was allowed could be converted to cash on a one-for-one basis. According to conventional obligations principles, "Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." La. C.C. art.1927. Hence, a binding contract can be formed when the employee performs pursuant to an employer's unwritten policy, if such policy is well-known and routinely followed. Knecht v. Board of Trustees for State Colleges & Universities & Northwestern State University, 591 So.2d 690, 695 (La.1991). When an employer promises a benefit to employees and the employees accept by their actions in meeting the conditions, the result is not a mere gratuity or illusory promise but a vested right in the employee to the promised benefit. Knecht, 591 So.2d at 695. Thus, once services are rendered, the right to receive a promised benefit vests and an employer cannot force the employee to forfeit this earned right. Id.; Beard v. Summit Institute of Pulmonary Medicine and Rehabilitation, Inc., 97-1784 (La.3/4/98), 707 So.2d 1233, 1236.
In all cases, however, an obligation cannot exist without a lawful cause. La. C.C. art.1966. The cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy. La. C.C. art.1968. Thus, a valid contract cannot be formed as a result of a legally unauthorized employer policy and consequently, an invalid contract cannot create a vested property right. Because, as explained above, the practice of "running out" sick leave was in direct contravention of applicable city civil service rules, we find a valid contract was not formed between police officers and the City. Consequently, the *947 legally unauthorized practice of "running out" sick leave prior to retirement cannot serve to create in plaintiffs' favor a vested right to be compensated for accumulated sick leave earned between July 10, 1970 and July 10, 1980 on a one-to-one basis.
We do not doubt a custom existed within the department, whereby New Orleans police officers routinely "ran out" their accumulated sick leave prior to retirement. However, at all times pertinent to plaintiffs' claims, the City's civil service rules prohibited the use of sick leave unless the officer incurs an illness or injury. Officers who "ran out" their sick time used all of their accumulated sick leave at one time without actually being sick or injured, in violation of the clear language of city civil service rules. In effect, the officers' conduct of "running out" sick leave breached official policy because it allowed them to receive compensation of one day's wages for each unused sick day. Although the record clearly establishes the existence of a departmental practice that might have constituted a benefit that vested in the form of deferred compensation had the policy been authorized by law, the fact that the policy violated express provisions of city civil service rules prevents the establishment of a vested right in favor of the plaintiffs. Accordingly, this Court cannot fashion a remedy for the officers who had an expectation that they would receive this benefit at retirement, based on the fact that some officers were able to receive one-for-one compensation by taking advantage of this legally unauthorized policy.

Conclusion
We are unable to conclude that a contract was legally formed by the plaintiff police officers and the City of New Orleans. Without a valid contractual right, the plaintiffs could not have a vested right to accrued unused sick leave. We therefore find that, upon their separation of service from the NOPD, plaintiffs are not entitled to be compensated for unused sick leave earned between July 10, 1970 and July 10, 1980 on a one-to-one basis. Plaintiffs are limited to utilizing one of the two legal options for conversion of unused accumulated sick leave in existence during the time period at issue.
For the reasons expressed above, we find the lower courts erred in concluding that the city civil service rules at issue deprive plaintiffs of a vested property right. Consequently, the judgment of the court of appeal, which affirmed the trial court's judgment in favor is plaintiffs, is reversed.
REVERSED.
NOTES
[1] While we recognize some of the operative facts in the instant case arose prior to the effective date of the 1974 Constitution, we find that, for purposes of resolving the case before us, the provisions of each Constitution creating a city civil service commission for the City of New Orleans and defining powers vested within city civil service commissions are essentially the same. See 1921 La. Const. art. XIV §§ .15(D) & (I)
[2] The City of New Orleans Civil Service Rule 2.7 provides in part:

At the time of separation from service, employees shall have the option to convert unused sick leave, accumulated under provisions of Rule VIII, Section 2.1, to cash or substitute unused sick leave for retirement credits, subject to the provisions of Section 55-29 of the Code of the City of New Orleans.
If an employee either does not elect to convert unused sick leave for retirement, or elects to have only a portion of that leave credited for retirement purposes, any residue of the unused sick leave shall be converted to cash subject to the following provisions:
(a) If an employee resigns, retires, is laid off, or dies, the conversion of unused sick leave to cash shall be determined as follows:
(1) For the 1st through 100th leave day, conversion shall be made at the rate of 1 day of pay for 5 days of leave.
(2) For the 101st through 200th leave day, conversion shall be made at the rate of 1 day of pay for 4 days of leave.
(3) For the 201st through 300th leave day, conversion shall be made at the rate of 1 day o pay for 3 days of leave.
(4) For the 301st through 400th leave day, conversion shall be made at the rate of 1 day of pay for 2 days of leave.
(5) All days in excess of the 400th leave day shall be converted at the rate of 1 day of pay for 1 day of leave.
[3] In December 1971, the CAO revised this memorandum. However, the policy's substance remained the same. CAO Policy Memorandum No. 86 Revised (12/16/1971).