1 ¡.GUIDRY, J.
A local registrar of voters appeals the judgment of the trial court denying his petition for mandamus and declaratory relief to have leave time earned while a local government employee reinstated on his state payroll record. Having considered the law and the evidence in this matter, we affirm.
FACTS AND PROCEDURAL HISTORY
On September 25, 1997, the appellant, Delmas L. Taylor, was appointed registrar of voters for Livingston Parish, an unclassified position in state government. Payment of Mr. Taylor’s salary as registrar of voters for Livingston Parish is apportioned between the Livingston Parish Council and the State of Louisiana, through the commissioner of elections, pursuant to La. R.S. 18:59. At the time of hearing on this matter, the State of Louisiana, through the commissioner of elections, paid 68.29 percent of Mr. Taylor’s salary and the Livingston Parish Council paid 31.71 percent.
Prior to assuming the office of registrar of voters, Mr. Taylor was employed with the Livingston Parish Council and had worked for the Livingston Parish Council for over twenty years. At the time Mr. Taylor assumed the position of registrar, he had earned 1,408.08 hours of annual leave and 1,748.70 hours of sick leave as an employee of the Livingston Parish Council. On taking office, Mr. Taylor requested that the leave hours earned and accumulated by him, while in the employment of the Livingston Parish Council, be transferred and credited to him under the state payroll system. This request was submitted to then commissioner of elections for Louisiana, Jerry Fowler. The request was granted and Commissioner Fowler directed the payroll section of the Department of Elections and Registration to add the parish leave hours to Mr. Taylor’s state payroll record.
Subsequently, in November 1999, Suzanne Haik-Terrell was elected commissioner of elections. On assuming office, the Legislative Auditor’s Office | ¡^reviewed the records of the Department of Elections and Registration and issued a report finding that the transfer of the leave hours earned by Mr. Taylor while employed by local government was inappropriate and possibly a violation of state law. Thereafter, Mr. Taylor was notified by letter that the parish hours credited to him under the state payroll system would be removed from his payroll record. This action then ensued.
A hearing on Mr. Taylor’s request for a writ of mandamus and declaratory relief was held on March 7, 2002, with the trial court taking the matter under advisement. *618 By a judgment rendered April 12, 2002, the trial court dismissed Mr. Taylor’s petition with prejudice. This devolutive appeal of that judgment followed.
ASSIGNMENTS OF ERROR
On appeal, Mr. Taylor asserts the following as errors committed by the trial court in the judgment rendered:
1. The trial court erred in holding that Delmas L. Taylor never developed a legitimate entitlement to leave earned during his employment with the Livingston Parish Council and transferred to the Commissioner of Elections; therefore, he was not entitled to due process prior to removal of the leave.
2. The trial court erred in concluding that use of sick and annual leave earned as a parish employee by a registrar or voters would violate Article VII, § 14 of the Louisiana Constitution.
3. The trial court erred in holding that the Commissioner of [Elections] had the authority to remove hours from the Livingston Parish Registrar of Voters’ leave balances.
DISCUSSION
The main thrust of Mr. Taylor’s arguments on appeal is that the trial court erred in failing to find that he had a vested property interest in having the leave hours, earned while employed with the Livingston Parish Council, credited to his state payroll record. Such a finding would mean that the unilateral removal of those hours from his state payroll record, without prior notice and an opportunity to be heard, violated Mr. Taylor’s constitutional right to due process and was thus Limproper. Moore v. Ware, 01-3341, p. 11-13 (La.2/25/03), 839 So.2d 940, 948-949. Therefore, we will first address whether Mr. Taylor developed a vested property interest when the parish leave hours were credited to his state payroll record.

Vested Property Interest

Both the federal and state constitutions provide that no person shall be deprived of life, liberty or property without due process of the law. U.S. Const, amends. V, XIV; La. Const, art. I, § 2. To claim the protections of due process, a claimant must show the existence of some property or liberty interest that has been adversely affected by state action. Johnson v. Southern University, 00-2615, p. 6 (La.App. 1st Cir.12/28/01), 803 So.2d 1140, 1144-1145. In this case, the removal of the leave hours from Mr. Taylor’s state payroll record by the Department of Elections and Registration constitutes state action. Nevertheless, it must be determined whether such action affected a property or liberty interest held by Mr. Taylor.
Property interests are not created by the constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law, rules, or understandings that secure certain benefits and that support claims of entitlement to those benefits. American International Gaming Association, Inc. v. Louisiana Riverboat Gaming Commission, 00-2864, pp. 13-14 (La.App. 1st Cir.9/11/02), 838 So.2d 5, 16.
In Lafleur v. City of New Orleans, 01-3224 (La.12/4/02), 831 So.2d 941, the Louisiana Supreme Court addressed an assertion by a group of current and former New Orleans police officers that they held a vested property interest in receiving “one-to-one” compensation for unused sick leave at the time of their separation from city employment. The supreme court found
| ^Although the record clearly establishes the existence of a departmental practice *619 that might have constituted a benefit that vested in the form of deferred compensation had the policy been authorized by law, the fact that the policy violated express provisions of city civil service rules prevents the establishment of a vested right in favor of the plaintiffs.
Lafleur, 01-3224 at 10, 831 So.2d at 947.
The record in Lafleur revealed that there were only three lawful means by which the police officers were authorized to utilize accumulated sick leave: (1) receive a lump sum cash payment for unused, accumulated sick leave at a five-to-one ratio (five days sick leave to one day’s pay) on separation from city employment; (2) conversion of unused, accumulated sick leave to retirement credit on separation from city employment; or (3) actual use of accumulated sick leave in accordance with general civil service rules for legitimate absence due to injury, illness, quarantine by health authorities, or death in the immediate family while still employed with the city. Lafleur, 01-3224 at 8-9, 831 So.2d at 946. However, a fourth practice of allowing police officers to “run out” accumulated sick leave was a widely-followed and well-known in the department, wherein “a police officer who was ready to retire took the balance of his sick leave without reporting to work and received his regular paycheck until his accumulated sick leave was exhausted.” Lafleur, 01-3224 at 1, 831 So.2d at 942. In 1982, that practice was expressly prohibited by a memorandum issued by the Chief Administrative Officer for the City of New Orleans. Lafleur, 01-3224 at 8, 831 So.2d at 945.
In rejecting the police officers proposition that they had acquired a vested property right to receive full, “one-to-one” compensation for unused, accumulated sick leave, the supreme court noted that an obligation cannot exist without a lawful cause and that an obligation is unlawful when enforcement of the obligation would produce a result prohibited by law or against public policy. La. C.C. arts.1966, 1968; Lafleur, 01-3224 at 9-10, 831 So.2d at 946-947.
|fiThe record before us reveals that former Commissioner Fowler issued a memorandum on November 17, 1997, expressly adopting Chapter 11 of the state Civil Service Rules to provide for the administration of leave time for unclassified employees in the department, such as registrars. Further, the record reveals that the director of the Department of Civil Service advised Commissioner Fowler that his interpretation of those rules was that crediting leave hours earned while employed in local government to state service was not authorized.
It is undisputed that the leave hours in question were not earned by Mr. Taylor while in state service, but were exclusively accumulated while he was employed with the Livingston Parish Council. Further, neither departmental or civil service rules provide for the transfer of such hours nor does state law. To the contrary, La. Const, art. VII, § 14(A) provides “the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private.” It has been held that La. Const, art. VII, § 14 is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so. City of Port Allen, Louisiana v. Louisiana Municipal Risk Management Agency, Inc., 439 So.2d 399, 401 (La.1983).
The action of former Commissioner Fowler in ordering that the parish leave hours be transferred to Mr. Taylor’s state payroll record was clearly an act of taking on a financial obligation that the depart *620 ment was not legally required to undertake and, therefore, was in violation of La. Const, art. VII, § 14(A). See Civil Service Rule 11.5; Louisiana Department of Elections and Registration Personnel Policy Statement No. 5; Town of Brusly v. West Baton Rouge Parish Police Jury, 283 So.2d 288 (La.App. 1st Cir.), writ denied, 284 So.2d 776 (La.1973).
Accordingly, to the extent that the transfer of the leave hours constitutes a violation of La. Const, art. VII, § 14(A), the transfer was not legally authorized Land thereby prevents the establishment of a vested property interest in favor of Mr. Taylor. See Lafleur, 01-3224 at 10, 831 So.2d at 947. Absent proof of a vested property interest, Mr. Taylor can claim no deprivation of his due process rights by the subsequent removal of the leave hours unlawfully credited to his state payroll record. See Johnson, 00-2615 at 14, 803 So.2d at 1144-1145. Thus, we find no error in the trial court’s dismissal of Mr. Taylor’s petition for a writ of mandamus and declaratory relief.
CONCLUSION
For the foregoing reasons, we find that Mr. Taylor faded to establish a legally cognizable vested property interest in having his parish leave hours credited under the state payroll system. In so finding, we hold that Mr. Taylor was not entitled to procedural due process protections regarding the removal of those hours from his state payroll record. We, therefore, affirm the judgment of the trial court. All costs of this appeal are assessed to the appellant, Delmas L. Taylor.
AFFIRMED.