Judge Paula A. Brown
The New Orleans Fire Fighters' Pension and Relief Fund (the "Fund") and its Trustees[1] (the "Board") in their official capacities (collectively referred to as "NOFF")[2] seek review of the district court's partial grant of summary judgment, in the form of injunctive relief, in favor of New Orleans Director of Finance, Norman S. Foster ("Mr. Foster")[3] , and New Orleans Fire Department Superintendent, Timothy McConnell, ("Mr. McConnell")(collectively referred to as the "City").[4] For the reasons set forth below, we reverse in part, and affirm in part, the district court's October 27, 2016 judgment.
PROCEDURAL HISTORY
The parties of this action have been before this Court on other issues. The following are the facts and the procedural history relevant to the instant appeal.
In New Orleans Fire Fighters' Pension & Relief Fund v. City of New Orleans , 13-0873 (La.App. 4 Cir. 12/18/13), 131 So.3d 412, writ denied, 14-0142 (La. 3/21/14), 135 So.3d 623, cert. denied , --- U.S. ----, 135 S.Ct. 148, 190 L.Ed.2d 47 (2014) (hereinafter referred to as " NOFF I "), this Court affirmed the district court's judgment granting a petition for a writ of mandamus *686 filed by the Fund.[5] In NOFF I , this Court held that the City of New Orleans was statutorily required, under La. R.S. 11:3384(F), to pay into the Fund the sum of $17,524,329.00, as the City of New Orleans' actuarially required (and then-owed) contribution. Id. , 13-0873,p. 10, 131 So.3d at 419.
Over the next few years, the parties litigated various issues concerning the amount owed to the Fund by the City of New Orleans. In October 2015, the parties entered into a settlement agreement wherein most of their claims against one another, including issues concerning amounts owed by the City of New Orleans to NOFF, were resolved. The settlement agreement specifically reserved the right of the parties to submit the "Alternative Interpretation" dispute-the dispute between the parties over the meaning and application of La. R.S. 11:3384(B)(1) -to the district judge, but only as to the stated demand for injunctive relief. The settlement agreement further specified that "[i]n the event the Alternative Interpretation is enjoined, application of any benefit recalculations affecting existing and future retirees will be prospective and not include clawbacks."
In furtherance of the settlement agreement, the parties executed a Cooperative Endeavor Agreement ("CEA"), effective January 1, 2016. The CEA reiterated the parties' agreement to submit the Alternative Interpretation dispute to the district court for resolution, with the further agreement that there would be no clawbacks; that is, no "retroactive recovery of any previously paid pension benefits to any Retiree or Fund participant as it applies to the Alternative Interpretation of benefits." The CEA also reserved the parties' rights to submit to the district court the issue of whether those receiving supplemental earnings benefits ["SEBs"], prior to January 1, 2016, may have their benefits offset.
Thereafter, on August 12, 2016, NOFF filed a Motion and Order for Declaratory Judgment seeking to have the district court "hear and determine the rights and obligations of the parties ... with respect to ... justiciable controversies stipulated to by the parties in the ... CEA ...."[6] More particularly, the motion sought to determine the "continued administration of the benefit formula established by La. R.S. 11:3384(B)" and the "application of the SEB Policy adopted by the Board of Trustees, as required by Section I(A)(19) of the CEA, to 'existing' retired Fund Participants (those who retired prior to January 1, 2016)."[7]
In response to the motion for a declaratory judgment, the City filed an opposition, as well as a request for an injunction, seeking to prohibit the allegedly incorrect calculation and awarding of pension benefits under La. R.S.11:3384(B). The injunction also sought an order requiring NOFF
*687 "to perform, for the period from January 1, 2016 onward, a dollar-for-dollar offset of (SEB's [sic] ) against retirement benefits payable from the Fund to the firefighters who have received and/or will receive SEB's [sic], including firefighters who were paid SEB's [sic] as of January 1, 2016."
The district court conducted a hearing on September 13, 2016, on the request for injunctive relief filed by NOFF and the motion for declaratory judgment filed by the City.[8] The parties consented to convert the matters to cross-motions for summary judgment.
On October 27, 2016, the district court rendered a judgment which granted the City's motion for summary judgment in part, and denied it in part, and granted NOFF's motion for summary judgment in part, and denied it in part. The district court also entered an injunction which ordered NOFF as follows:
• Effective prospectively as of January 1, 2017, as to all New System firefighters who have retired and/or will retire, who have received and/or will receive any benefits from the Fund and who have served beyond 12 years and have attained 50 years of age, to apply a 3? compensation percentage only to those members' service years served (1) beyond the twelfth service year, and (2) beyond age 50, and prospectively as of January 1, 2017, to recalculate any benefits to comply with the foregoing;
• Effective prospectively as of January 1, 2017, as to all New System firefighters who have retired and/or will retire, who have received and/or will receive any benefits from the Fund, and who have served beyond 30 years, to apply a 3? compensation percentage only to those members' service years served beyond the twelfth service year, and prospectively as of January 1, 2017, to recalculate any benefits to comply with the foregoing.
(emphasis in original.) The judgment, likewise, denied the City's request for an injunction which sought to offset pension benefits for firefighters who retired and began receiving benefits before January 1, 2016, by the amount of SEBs being received under the Louisiana's Workers Compensation statute.[9] In so ruling, the district court held that "no offset rule was in place at the time that those retirees retired and their rights to their benefits without offsets have vested."[10]
*688 This appeal follows.[11]
STANDARD OF REVIEW
The standard of review of a grant of a motion for summary judgments is de novo . Serpas v. Univ. Healthcare Sys ., 16-948, p. 2 (La.App. 4 Cir. 3/8/17), 213 So.3d 427, 428. Additionally, when a matter involves the interpretation of a statute, it is a question of law, and a de novo standard of review is applied. Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't. of Econ. Dev. , 10-0193, p. 9 (La. 1/19/11), 56 So.3d 181, 187. We, therefore, review the district court's judgment under a de novo standard of review.
DISCUSSION
The district court's injunctive relief, which was granted in favor of the City, is limited to the current version of La. R.S. 11:3384(B)(1) and applies to those firefighters who have retired or will retire and were employed by the fire department on or before December 31, 2014. With these parameters in mind, we review NOFF's assigned errors:
(1) The district court erred when it found that the Fund had not correctly interpreted and applied La. R.S. 11:3384(B), considering the contemporaneous construction given the statute over many years; and
(2) The district erred by failing to apply a three-year statute of limitations to any enjoined recalculation of pension benefits determined to have been unlawfully calculated in past years.[12]
Assignment of Error No. 1: Interpretation and Application of La. R.S. 11:3384(B)(1)
NOFF asserts, as to the firefighter with thirty years or more of service, La. R.S. 11:3384(B)(1) is unclear and ambiguous, writing:
The statute is ambiguous in that it provides that "if a member continues service beyond 30 years, the retirement benefit for each year or portion of a year beyond twelve years of service shall be an amount equal to 3? percent of the average annual compensation of each year or portion of a year," and then adds that "the retirement benefit shall not exceed a total of 3? percent each year." It finally states that the benefits of the firefighter "shall not exceed 100% of his average compensation." Taking these sentences into consideration, the governing Board of Trustees has implemented this formula by awarding those with 30 years of service 3? percent for each year of service, not just 3? percent for each year beyond 12 years of service as the City promotes. Otherwise, the sentence *689 that states "the retirement benefit shall not exceed a total of 3? percent each year" coupled with the qualifier that "benefits shall not exceed one hundred percent of average compensation" would have no meaning.
As to a member with less than thirty years of service, NOFF does not specify how subpart (B)(1) is unclear or ambiguous. However, NOFF contends there is no express prohibition "recognizing a higher than 2½% multiplier for the critical initial 12 years of service required for vesting under R.S. 11:3386."
History of La. R.S. 11:3384
La. R.S. 11:3384 has historically provided a retirement allowance for certain years of service with a higher multiplication factor ("multipliers") for other years, based upon an individual firefighter's age and the number of years of his/her service. As early as 1993, the Louisiana legislature authored legislation that used increased multipliers to reward firefighters with more years of service. The 1993 version of La. R.S. 11:3384 provided in part:
Firefighters employed after December 31, 1967; computation of benefits
Notwithstanding R.S. 11:3381, any firefighter who enters the employ of the fire department after December 31, 1967, who has reached the age of fifty years and who has not less than twenty years of service in the fire department, and who is a contributing member of this system, may retire upon his written application to the board setting forth at what time he desires to be retired, provided that at the time so specified for his retirement he shall have met the requirements as provided in this Section. In such event, the applicant shall receive a retirement allowance equal to two and one-half percent of his average salary based on the highest four consecutive years multiplied by the number of years of creditable service, not to exceed seventy-five percent and further provided that in the case of those employees who remain in service beyond twenty years and who have reached the age of fifty-five years, the percentage shall be three percent for all years over twenty, with a maximum benefit of eighty percent.
In 1995, the statute was amended to include subpart B, which specifically dealt with the computation of benefits. From that point until the statute was amended in 2014 (discussed infra ), the computation of benefits applied to firefighters who worked (one or more hours) after December 31, 1995. The 1995 amendment retained the same benefit calculation as the 1993 version of the statute, and provided if a firefighter remained a member of the system "beyond twenty years" and had attained "the age of fifty-five, his retirement benefit shall be increased by three percent for each year of service over twenty." The maximum benefit was increased from eighty percent to "one hundred percent of the average compensation earned during any three highest consecutive years of service preceding retirement."
The 1997 amendment added language to include "portion[s] of years of service beyond twenty years" in the calculation of benefits for those years "beyond twenty years." The statute was also amended to add the following sentence: "the retirement benefits shall not exceed a total of three percent each year." (emphasis added.) Except for an increase to three and one-third percent in 2008, this sentence, along with the maximum service benefits which remained one hundred percent, have been carried over with each amendment to the statute. The 1999 amendment added the following language: "[i]f the member continues service beyond thirty years, the retirement benefit for each year or portion of a year beyond twenty years *690 of service shall be an amount equal to three percent of the average annual compensation for each year or portion of a year." In 2007, the statute decreased the twenty year threshold to twelve years, which is reflected in the current version.
In 2008, the statute was amended to decrease the age limit for the higher percentage rate of benefits from fifty-five to fifty years, to increase the rate from three percent to three and one-third percent, and to increase the maximum service benefit to three and one-third percent each year. In the 2013 amendment, the number of consecutive years to be counted in calculating retirement benefits was increased from four to five.
In 2014 (effective January 1, 2015), La. R.S. 11:3384(B) was amended to add subpart B(2) that provided "a firefighter who entered the employ of the fire department on or after January 1, 2015, shall receive a retirement benefit equal to two and three quarters percent of his average compensation based on the five highest consecutive years of employment, multiplied by the number of years of creditable service." No cap was provided for subpart B(2), but subpart B(1) retained the three and one-third percent cap for those firefighters employed on or before December 31, 2014.
In 2016 (effective August 15, 2016), La. R.S. 11:3384(B) was amended and added subpart B(3). It currently provides:
(1) If a firefighter employed by the fire department on or before December 31, 2014, has worked one or more hours of service after December 31, 1995 , he shall receive a retirement benefit equal to two
and one-half percent of his average compensation based on the five highest consecutive years of employment, multiplied by the number of years of creditable service. If the member continues to remain a member of the system beyond twelve years of service and such member attains the age of fifty, the retirement benefit for each year or portion of a year beyond twelve years of service and after age fifty shall be an amount equal to three and one-third percent of the average annual compensation for each year or portion of a year. If the member continues service beyond thirty years, the retirement benefit for each year or portion of a year beyond twelve years of service shall be an amount equal to three and one-third percent of the average annual compensation for each year or portion of a year. However, the retirement benefit shall not exceed a total of three and one-third percent each year. The service benefits of such firefighter shall not exceed one hundred percent of the average compensation earned during any five highest average consecutive years of service preceding retirement.
(2) A firefighter who enters the employ of the fire department on or after January 1, 2015, shall receive a retirement benefit equal to two and three quarters percent of his average compensation based on his highest consecutive years of employment, multiplied by the number of years of creditable service. The service benefits shall not exceed one hundred percent of the average compensation earned during any five average consecutive years of service preceding retirement.
(3) A firefighter who enters the employ of the fire department on or after August 15, 2016, shall receive a retirement benefit equal to two and one-half percent of his average compensation, based on the five highest consecutive years of employment, multiplied by the number of years of creditable service. The service benefits of such firefighters shall not exceed one hundred percent of the average compensation earned during *691 any five highest average consecutive years of service preceding retirement.
(emphasis added).
Statutory Interpretation
It is well settled that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written and no further interpretation may be made in search of legislative intent." In re Succession of Boyter, 99-0761, p. 9 (La. 1/7/00), 756 So.2d 1122, 1128-29. However, if a statute is ambiguous or susceptible of more than one reasonable interpretation, statutory construction is necessary. Burnette v. Stalder , 00-2167, p. 6 (La. 6/29/01), 789 So.2d 573, 577.
La. R.S. 11:3384(B)(1) sets forth three categories of retirement percentages based on years of service: (1) All members not qualified for a higher percentage-two and one-half percent; (2) Members with beyond twelve years of service and fifty years of age or older-three and one-third percent for all years after year twelve of service; (3) Members with thirty years or more of service-three and one-third percent for all years after year twelve of service. However, the statute further states that "the retirement benefit shall not exceed a total of three and one-third percent each year." While the initial language sets forth precise and mandatory percentages based on qualifying conditions, the latter sentence limits or caps retirement benefits at a mandatory three and one-third percent for each year without setting forth the circumstances under which the cap applies.
There are at least two reasonable interpretations of La. R.S. 11:3384(B)(1), concerning the cap language. First, the one set forth by the district court, as previously discussed. Second, as urged by NOFF, the language concerning the mandatory percentages, when read in conjunction with the mandatory cap, can reasonably be construed to give NOFF discretion in setting the retirement benefit percentages between two and one-half percent and the three and one-third percent, provided it does not exceed the cap. In its written reasons for judgment, the district court, acknowledging the practice of the Board's calculation, set forth a possible reason for the cap:
[W]hen, under prior law, members age 55 with over 20 years of service received additional percentage points for each year of service over 20 years. Thus, absent the 3?% ceiling, the Board potentially could have added percentage points to a member's multiplier, and the 3?% ceiling prevented that result. The capping language makes
certain that a maximum of three and one-half percent is applied overall to prevent the two and one-half percent benefit, applied for the first twelve years, from being added to the three and one-third percent benefit, applied after twelve years, allowing for a total of five and five-sixths percent benefit.
Given that the cap cited in La. R.S. 11:3384(B)(1) is unclear and susceptible of more than one reasonable interpretation, we find La. R.S. 11:3384(B)(1) is ambiguous and statutory construction is necessary.
In determining the manner by which La. R.S. 11:3384(B)(1) is to be interpreted, we look to our established rules of statutory construction. First, "[t]he rule that legislation is the solemn expression of the legislative will and, therefore, the interpretation of a law primarily involves the search for the legislature's intent (citations omitted)." City of New Orleans v. Louisiana Assessors' Ret. & Relief Fund, 05-2548, p. 20 (La. 10/1/07), 986 So.2d 1, 16. "When the language of the law is susceptible of different meanings, it must be interpreted *692 as having the meaning that best conforms to the purpose of the law." La. C.C. art. 10 ; Fontenot v. Reddell Vidrine Water Dist. , 02-439, p. 7 (La. 1/14/03), 836 So.2d 14, 20. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole, and laws on the same subject matter must be interpreted in reference to each other. La. C.C. arts. 12 and 13 ; Conerly v. State , 97-0871, p. 4 (La. 7/8/98), 714 So.2d 709, 711. "The words of a law must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the law involves a technical matter." La. C.C. art. 11. Every word, sentence, or provision in a law is presumed to be intended to serve some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were used. Colvin v. Louisiana Patient's Compensation Fund OversightBd. , 06-1104, p. 6 (La. 1/17/07), 947 So.2d 15, 19 (citing Sultana Corp. v. Jewelers Mut. Ins. Co. , 03-0360, p. 9 (La. 12/3/03), 860 So.2d 1112, 1119 ). Consequently, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage "if a construction giving force to and preserving all words can legitimately be found." Id. , 06-1104, p. 6, 947 So.2d at 19-20.
In addition to the precepts on statutory construction, Louisiana courts have held that pension statutes, like those at issue here, are remedial in nature and must be liberally construed in favor of the intended beneficiaries, and any ambiguity in pension statutes must be resolved in favor of the persons intended to be benefited by those statutes. Swift v. State of Louisiana , 342 So.2d 191, 196 (La. 1977) ; Dunn v. City of Kenner , 15-1175, p. 7 (La. 1/27/16), 187 So.3d 404, 410 ; Harrison v. Trustees of Louisiana State Employees' Ret. Sys. , 95-0048, p. 7 (La.App. 1 Cir. 10/6/95), 671 So.2d 385, 390. In Harrison , the court further explained,"[t]he law does not favor denial of retirement benefits whenever there exists a reasonable construction otherwise." Id. (citing West Monroe Police Pension and Relief Fund v. Lofton , 356 So.2d 1126 (La.App. 2d Cir.1978) ).
Title 11 of Louisiana Revised Statutes contains the statutes that create and set forth the rights and duties of the Board. In enacting Title 11, the legislature set forth its purpose. La. R.S. 11:2 states that "[t]he purpose of this title is to consolidate public retirement law in order to effectively comply with the mandate of Article X, Section 29(E) of the Constitution of Louisiana to maintain public retirement systems on a sound actuarial basis." La. R.S. 11:3363(A) gives the Board exclusive control and management of the fund. It provides:
The board of trustees shall have exclusive control and management of the fund and all money donated, paid, or assessed for the relief or pensioning of members with disabilities, members who are superannuated, and retired members of the fire department, their widows and minor children, or widowed mothers, and for the payment of death benefits. This board is created to administer the funds paid into this system and to invest these funds in accordance with the provisions of this Part.
Subpart (F) of R.S. 11:3363 gives the Board the authority to "make necessary rules and regulations for its government in the discharge of its duties." The basic duty of a fiduciary or trustee of the fund is to discharge his/her duties with respect to the system in the exclusive interest of the members and beneficiaries. La. R.S. 11:3363.1(D).
*693 In the case sub judice , the Board, based upon the purpose of the Fund and its duties set forth in Title 11, relied on the mandatory percentages language read in conjunction with the mandatory cap language, to give it discretion in setting the retirement benefit percentages between the mandatory two and one-half percent and the mandatory three and one-third percent cap. The Board's discretion was not prohibited as long as the retirement benefit percentage did not exceed the cap and compensation did not exceed one hundred percent of the average compensation earned during any five highest consecutive years of service preceding retirement. The Board's interpretation of subpart (B)(1) allows members to reach one hundred percent of their average compensation in less time. This construction resolves the ambiguity in favor of the intended beneficiaries-the members of the Fund-and, in accordance with established jurisprudence, it must be adopted. Harrison , 95-0048, p. 7, 671 So.2d at 390 ; Dunn , 15-1175, p. 7, 187 So.3d at 410.
Contemporaneous Construction Rule
NOFF asserts the Board's interpretation is supported by the contemporaneous construction rule.
This jurisprudential established rule dates as far back as 1827. In State v. U-Drive It Car Co. , 79 So.2d 590, 593 (La.App. 4 Cir. 1955), this Court explained:
A concise statement of the doctrine is found in U. S. v. Alabama Great So. Railway Co. , 1892, 142 U.S. 615, 621, 12 S.Ct. 306, 308, 35 L.Ed. 1134, as follows:
'* * * It is a settled doctrine of this court that in case of ambiguity the judicial department will lean in favor of a construction given to a statute by the department charge with the execution of such statute, and, if such construction be acted upon for a number of years, will look with disfavor upon any sudden change, whereby parties who have contracted with the government upon the faith of such construction may be prejudiced. * * * These principles were announced as early as 1827 in Edwards' Lessee v. Darby , [25 U.S. 206,] 12 Wheat. 206, 210, [6 L.Ed. 603 (1827) ], and have been steadily adhered to in subsequent decisions. U. S. v. [State] Bank , [31 U.S. 29,] 6 Pet. 29, 39, [8 L.Ed. 308 (1832) ] ; U.S. v. MacDaniel , [32 U.S. 1,] 7 Pet. 1, [8 L.Ed. 587 (1833) ] ; Brown v. U. S. , 113 U.S. 568, 5 S.Ct. 648, [28 L.Ed. 1079 (1884) ] ; U.S. v. Moore , 95 U.S. 760, 763, [24 L.Ed. 588 (1877) ].'
This Court quoting Houghton v. Payne , 1904, 194 U.S. 88, 99, 24 S.Ct. 590, 593, 48 L.Ed. 888, espoused:
But in addition to these considerations it is well settled that it is only where the language of the statute is ambiguous and susceptible of two reasonable interpretations that weight is given to the doctrine of contemporaneous construction. U. S. v. Graham , 110 U.S. 219, 3 S.Ct. 582, 28 L.Ed. 126 [ (1884) ] ; U. S. v. Finnell , 185 U.S. 236, 22 S.Ct. 633, 46 L.Ed. 890 [ (1902) ]. Contemporaneous Construction is a rule of interpretation, but is not an absolute one...As was said in the Graham Case, 'if there were ambiguity or doubt, then such a practice, begun so early and continued so long, would be in the highest degree persuasive, if not absolutely controlling, in its effect....'
U-Drive , 79 So.2d at 594.
In Traigle v. PPG Indus., Inc., 332 So.2d 777, 782 (La. 1976), the Supreme Court, in reviewing whether a chemical used by PPG was exempted from taxation, set forth the applicable law on the contemporaneous construction rule writing:
*694 [A]n administrative construction cannot have weight where it is contrary to or inconsistent with the statute. However, where the statute is ambiguous ... a long settled contemporaneous construction by those charged with administering the statute is given substantial and often decisive weight in its interpretation. Roberts v. City of Baton Rouge , 236 La. 521, 108 So.2d 111 (1958) ; Esso Standard Oil Co. v. Crescent River Port P. Assn. , 235 La. 937, 106 So.2d 316 (1958) ; and decisions therein cited. See also: Tennessee Gas Transmission Co. v. Violet Trapping Co. , 248 La. 49, 176 So.2d 425 (1965) ; 3 Sutherland, Statutory Construction, Section 66.04 (4th (Sands) ed., 1974).
Having found La. R.S. 11:3384(B)(1) to be ambiguous, we now review the Board's argument based upon contemporaneous construction of subpart (B)(1).[13]
NOFF argues that dating back to 1999, the Board applied the same interpretation to the statute.
In reviewing subpart (B)(1) under this rule, we will look at the two categories of firefighters separately: (1) as applied to members with thirty years or more of service; and (2) as applied to members with beyond twelve years of service and who have attained fifty years of age.
I. Thirty Years of Service
The record evidence indicates the Board has a longstanding practice of applying the three and one-third percent cap benefit (three percent cap before 2008) for each year to members with thirty years or more of service with an aggregate not to exceed one-hundred percent. After the cap was added to La. R.S. 11:3384 by the 1997 amendment, the Board requested information from their actuary in order to get cost estimates for proposed changes to the benefit structure. This included adding provisions to pay members with thirty years or more of service at a three percent accrual rate for all years of service. Based on the cost estimates provided by the actuary, the Board ultimately adopted the new regulation in August of 1999. The Board minutes and the Fund's actuary reports in the record reflect that the Board has consistently used its discretion and applied the adopted regulation since 1999.
NOFF's contemporaneous construction is supported by record evidence; notably, a letter to the Board from its attorney dated August 5, 2008, and the minutes of the Board's meeting from August 6, 2008. The August 5, 2008 letter from the Board's attorney was addressed to the Board; at that time, Mr. McConnell was a Board member. Included in the letter was a detailed discussion of the legislative history of La. R.S. 11:3384. It acknowledged the 2007 amendment setting forth a new benefit formula was confusing and "seemingly surplusage." The attorney noted:
In 2007, as noted, the twenty year threshold was amended to twelve, consonant with our minimum vesting standard.
Standing alone, this "new" benefit formula is confusing at best and seemingly surplusage. The preceding sentence provides in both the 1999 and the 2007 Acts a "split" on accruals: 20 or 12 years of service plus attainment of age 55. There was clearly a purpose in 1999 for inserting a 30-years of service accrual, regardless of age. Recall that as originally drafted the 30-years was linked to age 55. This was amended out. Further complication *695 comes in 2008 with the reduction of the age factor to 50, which is now coupled with the 12-year vesting standard. In both cases, the anti-stacking provision [the retirement benefit shall not exceed three percent (1999) or now three and one-third (2008) ] adds yet more ambiguity. While prior legislative digests characterize the prior 3% cap as a means of correcting the potential for 5 ½ % accruals, this surmising is not supported by the language. A reasonable interpretation is that the 3% (now 3?%) cap is to be applied across the board if the 30-year service requirement is met.
(emphasis added). The attorney continued and was of the opinion the Board's longstanding "contemporaneous construction" of the statute, since 1999, was a reasonable interpretation. The attorney noted the Board had balanced "two distinct benefit formulas by liberally construing the 30-year standard to address all years of service ...."
Additionally, the minutes from the August 6, 2008 Board meeting reflect Mr. McConnell was present. At the meeting, the Board passed a regulation relative to new legislation concerning La. R.S. 11:3384 [effective date July 15, 2008]. The minutes specifically state the applicable benefit percentages, as well as the formula used for thirty-year members and provide, "if members have completed 30 or more Years of Service ... their Service Retirement Benefit will be 3?% of their average salary based on their highest four consecutive Years of Service multiplied by their total Years of Service."[14]
After the City discovered how the Board was calculating retirement benefits, the City and the Board worked together with the legislature on amending the statute. Act No. 813 of the 2014 Regular Legislative Session corrected the issue moving forward by authorizing a flat two and three-quarter percent benefit rate for all years for any fireman hired on or after January 1, 2015, and the cap was removed from this subpart- La. R.S. 11:3384(B)(2). However, the cap was not removed from (B)(1).
Before the passage of Act 813, the House Retirement Committee met to discuss the bill. Representatives of both the City and the Fund were present. At the committee meeting, Nicholas Felton, a longstanding board member of the Fund, discussed the effect of the 2014 amendment to La. R.S. 11:3384. He submitted that the new benefit percentage rate would only be applicable to new hires. He explained that current Fund members received two and one-half percent for all years until they reach thirty years, when the benefit was recalculated at three and one-third percent. He added that the new law would provide for the two and three-fourths rate throughout their entire career, eliminating the "indicator." Again, the City did not voice any issue with Mr. Felton's recitation of the current application of the law, nor did it propose an amendment to the committee that would clarify the interpretation.
Since 1999, the Board, as the administrator of the Fund, has consistently applied the multiplier to each year for those with thirty years or more of service. There is an absence of a legislative amendment during that long period to correct NOFF's application of La. R.S. 11:3384(B)(1).
In Traigle , the Supreme Court explained that "[i]n the absence of legislative *696 amendment during that long period, the administrative construction may reasonably be presumed to be in accord with the legislative intent; it also being a reasonable meaning of the legislative language in the light of the legislative purpose evidenced by the statute as a whole." Id. , 332 So.2d at 782 ; See also , Harrison , 95-0048, p. 7, 671 So.2d at 390, where the court in reviewing an ambiguous pension statute considered the lack of legislative intent, either express or implied; Coastal Drilling Co. v. Dufrene , 15-1793, p. 10 (La. 3/15/16), 198 So.3d 108, 116 (quoting Traigle, 332 So.2d at 782 ), where the Supreme Court upheld the department of revenue's 1987 administrative regulation liberally interpreting a tax statute, finding "a time-endured construction by an agency 'may reasonably be presumed to be in accord with the legislative intent.' "
In the case sub judice , the legislature has neither amended nor abolished the cap provided for in La. R.S. 11:3384(B)(1), although it eliminated the cap in (B)(2) and (B)(3). Consequently, in the absence of legislative amendment to La. R.S. 11:3384(B)(1), we conclude the administrative construction by the Board regarding those members with thirty years of service or more may reasonably be presumed to be in accord with the legislative intent.[15]
We find the district court erred to the extent that it found the terms of La. R.S. 11:3384(B)(1) to be clear and unambiguous, and in enjoining the Board from calculating benefits pursuant to La. R.S. 11:3384(B)(1) prospectively to those members who retired or who will retire, and who were employed on or before December 31, 2014 with thirty years or more of service at three and one-third percent for each year served.[16]
Accordingly, we reverse that portion of the district court's judgment.
II. Beyond Twelve Years of Service and Fifty Years of Age
However, we find NOFF's argument of application of the contemporaneous construction rule fails regarding those members who have beyond twelve years of service (but less than thirty years) and have attained fifty years of age. NOFF does not clearly state which interpretation of La. R.S. 11:3384(B)(1) it adopted, and the record is devoid of any indication that the Board had a longstanding practice applied to these members that differed from the reasons set forth by the district court. This is evidenced by the August 5, 2008 letter to the Board from the Board's attorney and the August 6, 2008 minutes of the Board's meeting. In the letter, the attorney explained the "Actuarial Analysis" of 2008 Amendment of La. R.S. 11:3384(B) stating in pertinent part:
(1) The higher accrual rate (three and one-third percent) applies only to each year after both attainment of age 50 and completion of 12 years of service. A benefit accrual rate of 2.5% applies to each year before satisfaction of both requirements.
(emphasis in original.) In discussing the contemporaneous construction given to the statute, the attorney wrote, "[t]he 'higher accrual rate,' as the Legislative Actuary *697 summarized, applies each year after both attainment of age 50 and completion of 12 years of service. The rate of 2.5 % applies otherwise. (emphasis in original)." Additionally, the minutes from the August 6, 2008 Board meeting reflect that the Board passed a regulation relative to new legislation concerning La. R.S. 11:3384 [effective date July 15, 2008]. The minutes specifically state the formula to be implemented as a result of the latest legislative act and note, "[o]nce members have attained age 50 years of age, for every year after 12 years of service they will accrue 3?% ...."
Unlike the benefits applied to the members with thirty years of service, the record evidence reflects the Board interpreted the statute to apply the multiplier only after twelve years of service and reaching age fifty. Thus, the district court did not err in ordering the Board to administer the Fund to members with beyond twelve years of service and who had attained fifty years of age at a rate of three and one-third percent.
Accordingly, we affirm this portion of the district court's judgment.
Vested Rights of Those Who Have Retired
NOFF asserts regardless of whether the Board's interpretation of La. R.S. 11:3384(B)(1) is correct, those members of the Fund who have retired relied on the Board's calculation, and have a vested right in those benefits. NOFF argues that the district court's granting in part of the City's motion for summary judgment as to existing retirees on a prospective basis violates the retirees vested rights.
The district court, in its written reasons, held that the retirees had no vested right to have benefits calculated incorrectly. The district court found that an "[a]pplication on a prospective basis of the correct, statutorily-mandated benefit formula as to existing retires (including those who retired before the settlement) is both permitted and mandated." We agree, in part.
La. Const. Art. 10, § 29 (B) provides in pertinent part:
Membership in any retirement system of the state or of a political subdivision thereof shall be a contractual relationship between employee and employer, and the state shall guarantee benefits payable to a member of a state retirement system or retiree or to his lawful beneficiary upon his death.
Further, La. Const. Art. 10, § 29 (E)(5) provides in part that "[t]he accrued benefits of members of any state or statewide public retirement system shall not be diminished or impaired." In Knecht v. Bd. of Trustees for State Colleges & Universities & Nw. State Univ. , 591 So.2d 690, 695 (La. 1991), the Supreme Court explained when an employee's promised benefit becomes a vested right:
Nearly every state has determined, using precepts similar to our civilian principles, that when an employer promises a benefit to employees, and employees accept by their actions in meeting the conditions, the result is not a mere gratuity or illusory promise but a vested right in the employee to the promised benefit. See, e.g., T.L. James & Co. v. Montgomery, 332 So.2d 834 (La.1976) ; Hoffman La-Roche v. Hugh Campbell, 512 So.2d 725 (Ala.1987) ; Gesina v. General Electric Corp., [162 Ariz. 35] 780 P.2d 1376 (Ariz.Ct.App.1989) ; Sterling Drug Inc. v. Oxford, 294 Ark. 239, 743 S.W.2d 380 (1988) ; Libby v. Calais Regional Hospital, 554 A.2d 1181 (Me.1989) ;
Toussaint v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579, 292 N.W.2d 880, 893 (1980) ; Southwest Gas Corp. v. Ahmad, 99 Nev. 594, 668 P.2d 261 (1983) ;
*698 Gilman v. County of Cheshire, 126 N.H. 445, 493 A.2d 485 (1985) ; Cantor v. Berkshire Life Insurance Co., 171 Ohio St. 405, 171 N.E.2d 518 (1960) ; Bellomini v. State Employees' Retirement Board of Pa., 498 Pa. 204, 445 A.2d 737 (1982) ; Textile Workers Union of America, Local #513 v. Brookside Mills, 203 Tenn. 71, 309 S.W.2d 371 (1957) ; Ferraro v. Hyatt Corp., 124 Wis.2d 154, 368 N.W.2d 666 (1985). Courts have applied this rule to the governmental employer in the same manner that it applies to the private employer, rejecting the argument that a governmental employer bestows benefits on its employees subject to the employer's whim. Gilman , supra ; Bellomini , supra.
In Smith v. Bd. of Trustees of Louisiana State Employees' Ret. Sys. , 02-2161, p. 9 (La. 6/27/03), 851 So.2d 1100, 1106, cert. denied , 540 U.S. 1179, 124 S.Ct. 1414, 158 L.Ed.2d 81 (2004), the Supreme Court further explained:
[A] "vested" right "must be absolute, complete and unconditional, independent of a contingency, and a mere expectancy of future benefit ... does not constitute a vested right." Sawicki v. K/S Stavanger Prince , 01-0528 (La. 12/7/01), 802 So.2d 598. Similarly, "accrued" has been defined to mean "in the sense of due and payable; vested," Black's Law Dictionary , and "to day on which the creditor could institute his demand." Ledoux v. City of Baton Rouge , 99-2061 (La. 2/29/00), 755 So.2d 877, 879-80.
In Harrison , 671 So.2d 385, the appellate court reviewed whether a plaintiff's benefit factor for his retirement plan was a vested right. The plaintiff, an elected judge ("Judge Harrison"), filed suit against the defendant, Louisiana State Employees' Retirement System ("LASERS"), seeking a declaratory judgment regarding his entitlement to certain retirement benefits. The dispute arose out of the proper retirement benefit percentage factor ("benefit factor") applicable to the transfer of the judge's eleven and one-half years of creditable service from the District Attorneys' Retirement System ("DARS") to LASERS. The Judge Harrison asserted he had a vested right in a benefit percentage of three percent. The appellate court agreed.
The First Circuit determined the applicable benefit factor pursuant to the law in effect when the transfer of service credits was effected. The parties conceded that at the time of the transfer from DARS to LASERS, the law specifically provided that service credit could be transferred from DARS to LASERS but did not specifically provide whether the benefit factor of the transferring system (the 3% factor) or the receiving system (the 2.5% factor) should be applied in calculating the retirement benefits. Harrison , 95-0048 at pp. 6-7, 671 So.2d at 390,. The court noted a gap in the law existed that was not remedied until legislation was enacted in 1984 to specifically address transfers between public retirement systems. The court found the absence of this procedure prior to the 1984 amendment rendered the statutory scheme ambiguous with respect to the implementation of the transfer of benefits. More specifically, the court concluded the statutory scheme was ambiguous regarding the applicable benefit factor to be used in calculating Judge Harrison's retirement benefit for the eleven and one-half years of transferred creditable service. Id.
LASERS countered that La. Const. Art. 10, § 29 (E)(4) protected the actuarial soundness of LASERS and other state retirement systems by prohibiting the state from taking " 'any action that shall cause the actuarial present value of expected future expenditures of the retirement system to exceed or further exceed the sum of the current actuarial value of assets *699 and the actuarial present value of expected future receipts of the retirement system....' " Harrison , 95-0048, p. 9, 671 So.2d at 391 (quoting La. Const. Art. X § 29 (E)(4) ). The reviewing court rejected that argument, finding that the constitutional provision did not become effective until Dec. 23, 1987 and could not be applied retroactively. The court held:
The Louisiana Constitution of 1974, Art. I, § 23 provides that no law impairing the obligation of contracts shall be enacted. A law will not be applied retroactively to disturb vested rights. Graham v. Sequoya Corp., 478 So.2d 1223 (La.1985) ; Utley-James v. State, Div. of Administration, 593 So.2d 1261 (La.App. 1st Cir.1991), writ denied, 597 So.2d 1036 (La.1992). Vested retirement rights are contractual obligations that cannot be divested by the retroactive application of a law. Moise v. Louisiana State Employees' Retirement System, 366 So.2d 1054 (La.App. 1st Cir.1978), writ denied, 368 So.2d 124 (La.1979).
Louisiana jurisprudence generally provides that a public employee's right to retirement benefits does not become vested until eligibility for retirement is attained and that prior to the achievement of retirement eligibility, the details of a contributory retirement system may be modified by the legislature to the prejudice of the employee. Patterson v. City of Baton Rouge, 309 So.2d 306 (La.1975) ; Louisiana State Troopers Association, Inc. v. Louisiana State Police Retirement Board, 417 So.2d 440 (La.App. 1st Cir.1982).
Id., 95-0048, pp. 9-10, 671 So.2d at 391-92 (emphasis added). The court concluded that based upon the applicable statute, Judge Harrison was immediately vested, which included the three percent benefit factor applicable to transferred service. The reviewing court opined:
A subsequently enacted constitutional provision or statute cannot operate to divest Judge Harrison of this benefit. We do not reach the merits of whether LSA-Const. Art. X, § 29 (E) would preclude LASERS' use of the 3% benefit factor because even if it did, the provision cannot operate retroactively to divest Judge Harrison of rights which became vested in 1982.
Id. , 95-0048, p. 10, 671 So.2d at 392.
In contrast, in LaFleur v. City of New Orleans , 01-3224, pp. 9-10 (La. 12/4/02), 831 So.2d 941, 946, the Supreme Court explained that "a valid contract cannot be formed as a result of a legally unauthorized employer policy and consequently, an invalid contract cannot create a vested property right." In LaFleur , the plaintiffs, officers of the New Orleans Police Department ("NOPD"), argued the customary practice within the NOPD of allowing officers to "run out" their accrued sick leave prior to retirement constituted an enforceable contract, and the plaintiffs, who were not allowed to run out their sick leave, should be entitled to compensation for their accrued sick leave. The Supreme Court concluded although the record established the existence of a departmental practice, the policy violated express provisions of city civil service rules and prevented the establishment of a vested right in favor of the plaintiffs. Id., 01-3224, pp. 10-11, 831 So.2d at 947.
In the case sub judice , the applicable law and the record evidence reflect that when considering retirement, a prospective retiree would meet with the Fund office and calculate his/her retirement benefit based upon a prospective retirement date. The individual would formally complete an application for retirement, which would be adjudicated before the Board. If the application *700 was approved, the Fund would notify the individual in writing that their application was approved. The approval letter, signed by a member of the Board, would set forth the guaranteed monthly benefit amount to be paid upon retirement. Thus, the retirees were promised a benefit by their employer. At issue is whether the district court erred in finding the retired members did not have vested rights in the promised benefit.
In discussing this issue, we will, again, look at the two categories of members separately.
I. Thirty Years of Service
As previously held herein, La. R.S. 11:3384(B)(1) is ambiguous; and, a reasonable contemporaneous construction gives the Board the discretion to calculate the benefits of those retirees with thirty years or more of service at three and one-third percent for each year of service, which it was legally authorized to administer pursuant to Title 11. Applying the applicable statutes, constitutional provisions, and jurisprudence, we find these retirees have vested rights in their retirement benefits which cannot be divested by a subsequent interpretation, or enacted constitutional provision or statute.[17] As set forth in La. Const. Art. 10, § 29 (B) and (E), those benefits shall not be diminished or impaired.
Accordingly, we reverse that portion of the district court's judgment.
II. Beyond Twelve Years of Service and Fifty Years of Age
In contrast, the Board was not authorized to guarantee to retired members with beyond twelve years of service and who attained age fifty benefits other than the benefits established in the statute as interpreted by the Board and set forth in the district court's reasons; as a result, these retirees do not have a vested and accrued contractual right to those incorrectly calculated benefits. LaFleur, 01-3224, pp. 9-10, 831 So.2d at 947.
Accordingly, we affirm that portion of the district court's judgment.
Assignment of Error No. 2: Prescription
NOFF asserts the City's claims have prescribed.[18] Specifically, *701 NOFF argues that the City's reconventional demand was filed on September 17, 2015, and, pursuant to La. C.C. 3494, the Fund should not be required to recalculate the benefits of anyone "who retired more than three years before the date of the filing of the reconventional demand, or September 17, 2012."[19]
The district court, although not specifically addressing the three-year prescriptive period, indicated prescription was not a viable issue.[20] We agree. The City seeks prospective application of La. R.S. 11:3384(B)(1) and is not seeking to be reimbursed for any amounts erroneously paid to the retirees over the years; the City agreed to waive its right for reimbursement under La. R.S. 11:192 in the settlement agreement.[21]
This assignment of error regarding prescription is without merit
CONCLUSION
Based on our de novo review, and for the reasons set forth herein, we reverse the portion of district court's injunction regarding those members with thirty years or more of service and find the retirement benefits of those retirees have vested; in all other respects, we affirm the district court's judgment.
AFFIRMED IN PART; REVERSED IN PART
LOVE, J., CONCURS IN PART AND DISSENTS IN PART
BELSOME, J., CONCURS IN PART AND DISSENTS IN PART WITH REASONS
DYSART, J., CONCURS IN PART AND DISSENTS IN PART
LOBRANO, J., CONCURS IN PART AND DISSENTS IN PART FOR THE REASONS ASSIGNED BY JUDGE DYSART
LOVE, J., CONCURS IN PART AND DISSENTS IN PART
I concur in part and dissent in part for the reasons assigned by Judge Belsome.
I write separately based on the precarious procedural posture of this impactful matter. The 1974 Louisiana Constitution *702 states that "[a] majority of the judges sitting in a case shall concur to render judgment." LA. CONST. art. V, § 8. The Louisiana Supreme Court further enumerated this importance in Parfait v. Transocean Offshore, Inc. , 07-0220 (La. 4/5/07), 953 So.2d 57, when the Court vacated this Court's judgment and remanded the matter for en banc consideration with briefing, argument, and full opinion. This Court then was required to clarify its majority position en banc . See Parfait v. Transocean Offshore, Inc. , 04-1271 (La. App. 4 Cir. 8/10/07), 992 So.2d 465.
While the plurality opinion garners three votes on each issue, the split between the thirty-year firefighters and twelve-year firefighters and their respective vested rights is problematic. A majority of the judges' voted to affirm the trial court as to the 12-year firemen. However, this is a result of the contradictory findings that La. R.S. 11:3384(B)(1) is both clear and unambiguous, while also finding that same the provision is capable of "two reasonable interpretations," which necessitates statutory construction. Based on this plurality, one group of firefighters benefits from the Board's favorable benefit calculations, while the other does not. This plurality opinion confuses this Court's position on the interpretation and application of La. R.S. 11:3384(B)(1), while also lacking precedential value. See State v. Karey , 16-0377, p. 1 (La. 9/6/17), 224 So.3d 959 (Crichton, J., dissenting); State v. Summers , 15-1363, p. 7 (La. 7/29/15), 170 So.3d 960, 966 (Crichton, J., dissenting); Warren v. Louisiana Med. Mut. Ins. Co. , 07-0492, p. 4 (La. 12/2/08), 21 So.3d 186, 210 (Knoll, J., concurring). The necessity of a plurality opinion is one concept when faced with a finite number of Justices on the Louisiana Supreme Court. However, in the case sub judice on the Fourth Circuit level, the plurality nature of the opinion could potentially be eradicated by hearing the matter en banc .
Rule 1-5 of the Uniform Rules, Court of Appeal, provides that "[w]hen authorized by law, or when the court deems it necessary to promote justice or expedite the business of court, the court may sit in panels of more than 3 judges or en banc." Given the importance and enormity of the present matter and the dictate of the Supreme Court to issue clear majority opinions, I would set the matter for en banc consideration "to promote justice."
BELSOME, J., CONCURS IN PART AND DISSENTS IN PART WITH REASONS
I respectfully concur in part and dissent in part from the majority opinion. The only issue before this Court is the interpretation of La. R.S. 11:3384(B)(1), which pertains to the calculation of retirement benefits for firefighters. The Board of Trustees of Louisiana Firefighters' Pension and Relief Fund (Board) argues that the statute gives it discretion in setting benefit percentages up to a three and one-third cap, whereas the City of New Orleans (City) argues that precise percentages are plainly set forth in the statute. La. R.S. 11:3384(B)(1) states:
If a firefighter employed by the fire department on or before December 31, 2014, has worked one or more hours of service after December 31, 1995, he shall receive a retirement benefit equal to two and one-half percent of his average compensation based on the five highest consecutive years of employment, multiplied by the number of years of creditable service. If the member continues to remain a member of the system beyond twelve years of service and such member attains the age of fifty, the retirement benefit for each year or portion of a year beyond twelve years of service *703 and after age fifty shall be an amount equal to three and one-third percent of the average annual compensation for each year or portion of a year. If the member continues service beyond thirty years, the retirement benefit for each year or portion of a year beyond twelve years of service shall be an amount equal to three and one-third percent of the average annual compensation for each year or portion of a year. However, the retirement benefit shall not exceed a total of three and one-third percent each year. The service benefits of such firefighter shall not exceed one hundred percent of the average compensation earned during any five highest average consecutive years of service preceding retirement. (emphasis supplied).
La. R.S. 11:3384(B)(1).
The majority categorizes the firefighters into two categories: 1) firefighters with thirty years of service (thirty-year firefighters)[1] and 2) those beyond twelve years of service and fifty years of age (twelve-year firefighters).[2] Finding the statute to be ambiguous,[3] the majority concludes that current and retired thirty-year firefighters are entitled to the Board's favorable benefit calculations, pursuant to its contemporaneous construction of the statute. Conversely, finding no evidence of the Board's contemporaneous construction concerning the twelve-year firefighters, the majority excluded this category from the Board's favorable benefit calculations. To the extent that the twelve-year firefighters, current and retired, were excluded from receiving the more favorable calculations, I dissent from the majority opinion.
CONTEMPORANEOUS CONSTRUCTION
The contemporaneous construction rule gives "substantial and often decisive weight" to an agency's long-standing interpretation. See Coastal Drilling Co. v. Dufrene , 15-1793 (La. 3/15/16), 198 So.3d 108, 116, reh'g denied (5/2/2016) (citation omitted) (where the Louisiana Supreme Court upheld the department of revenue's 1987 administrative regulation liberally interpreting a tax statute, finding that such a "time-endured" construction " 'may reasonably be presumed to be in accord with the legislative intent.' " (internal citation omitted) ). Nevertheless, the fundamental rule of construction is to ascertain and give effect to the intention of the legislature as expressed in the statute; contemporaneous construction is merely an aid in interpreting ambiguous language. Clark v. Bd. of Comm'rs, Port of New Orleans , 422 So.2d 247, 250 (La. App. 4th Cir. 1982).
A review of the record demonstrates that the Board has awarded retirement benefits to firefighters up to the three and one-third percent cap for almost thirty years. In particular, the Board has retroactively applied the three and one-third multiplier to thirty-year firefighters-since 1999, and twelve-year firefighters-since 2011 at the latest. Moreover, there is nothing in the record to suggest the Board construed the statute to limit its discretion *704 in setting the benefit percentage to thirty-year firefighters.[4]
Particularly as it relates to the twelve-year firefighters, the affidavit of Mr. Foster reflects that "the Board awarded retirement benefits to firefighters at 3 1/3% of firefighters' average compensation, as to years of service beyond the twelfth service year, regardless of whether those years were beyond age 50." Mr. Foster's affidavit coupled with the 2011 Actuarial Valuation Report, submitted by the actuary, reveal that this interpretation was being used at least since 2011. Thus, the record contains ample evidence of the Board's longstanding contemporaneous construction, which is inclusive of twelve-year firefighters.
The Board's "time-endured" construction affords it discretion to depart from the mandatory minimum percentage rate, provided it does not exceed the cap. This interpretation allows members to reach one hundred percent of their average compensation in less time. It further resolves the ambiguity in favor of the all of the members of the system. Since the Board's construction resolves the ambiguity in favor of the beneficiaries, it must be adopted.
LEGISLATIVE HISTORY
Significantly, a review of the legislative history concerning this statute supports resolving the issue in favor of the Board's interpretation. After "discovering" the "interpretation issue," and discussing it at the January 14, 2014, board meeting,[5] remedial action was taken in 2014 that removed the ambiguity from the statute. The 2014 legislative history reflects that the City and the Board worked together to pass the legislation.[6] Act No. 813 of the 2014 Regular *705 Legislative Session corrected the issue, prospectively only , by authorizing a flat two and three-quarter percent benefit rate for all years for any fireman hired on or after January 1, 2015. Significantly, the cap was removed.
Before the passage of Act 813, the House Retirement Committee met to discuss the bill. Representatives of both the City and the Fund were present. Nicholas Felton, who is a longstanding board member of the Fund, discussed the effect of the 2014 amendment to La. R.S. 11:3384. He submitted that the new benefit percentage rate would only be applicable to new hires. He explained that current Fund members received two and one-half percent for all years until they reach thirty years, when it is recalculated at three and one-third percent. He added that the new law would provide for the two and three-fourths rate throughout their entire career, eliminating the "indicator." Again, the City did not voice any issue with Mr. Felton's recitation of the current application of the law, nor did it propose an amendment to the committee that would clarify the "interpretation issue."
From these discussions, it is clear that the legislature was aware of the way the Board was interpreting and calculating La. R.S. 11:3384(B), yet it abstained from taking corrective action in 2014. As evidenced above, the broad legislative intent was to allow the Fund discretion in setting retirement benefit percentage rates between the mandatory two and one-half percent rate and the three and one-third cap rate. Nothing in the plain language of the statute restricts the reading only to thirty-year firefighters, as expressed by the majority. Accordingly, I disagree with the majority to the extent that it excluded twelve-year/age fifty firefighters from receiving the benefit of the Board's liberal application of the statute.
RETIRED MEMBERS
Although the statutory interpretation weighs in favor of all of the members of the fund, I further find that retired members have a vested and accrued contractual right to their pension. La. Const. Art. 10, § 29 (B) provides in pertinent part:
Membership in any retirement system of the state or of a political subdivision thereof shall be a contractual relationship between employee and employer, and the state shall guarantee benefits payable to a member of a state retirement system or retiree or to his lawful beneficiary upon his death.
Section E(5) further provides: "The accrued benefits of members of any state or statewide public retirement system shall not be diminished or impaired. Future benefit provisions of the state and statewide public retirement systems shall only be altered by legislative enactment. "
The Louisiana Supreme Court has explained:
[A] "vested" right "must be absolute, complete and unconditional, independent of a contingency, and a mere expectancy of future benefit ... does not constitute a vested right." Sawicki v. K/S Stavanger Prince , 01-0528 (La. 12/7/01), 802 So.2d 598. Similarly, "accrued" has been defined to mean "in the sense of due and *706 payable; vested," Black's Law Dictionary , and "to day on which the creditor could institute his demand." Ledoux v. City of Baton Rouge , 99-2061 (La. 2/29/00), 755 So.2d 877, 879-80.
Smith v. Bd. of Trustees of Louisiana State Employees' Ret. Sys. , 02-2161, p. 9 (La. 6/27/03), 851 So.2d 1100, 1106, cert. denied , 540 U.S. 1179, 124 S.Ct. 1414, 158 L.Ed.2d 81 (2004). The Smith Court further noted that Louisiana jurisprudence generally provides that a public employee's right to retirement benefits does not become vested until eligibility for retirement is attained and that prior to the achievement of retirement eligibility, the details of a contributory retirement system may be modified by the legislature to the prejudice of the employee. Id. (citations omitted).
The applicable law and the record reflect that when considering retirement, a prospective retiree would meet with the Fund office and calculate their retirement benefit based upon a prospective retirement date. The individual would then formally complete an application for retirement, which would be adjudicated before the Board. If the application was approved, the Fund would notify the individual in writing that their application was approved. The approval letter, signed by a member of the Board, would set forth the guaranteed monthly benefit amount to be paid upon retirement.
Under these circumstances, those retirees, who have relied on the Board's ratification and guarantee of the specific monthly benefit amount, and retired based on such, have a vested and accrued contractual right in their agreed upon pension benefits. Those benefits shall not be diminished or impaired. La. Const. Art. 10, § 29 (B) and (E), supra . Compare: Smith , 02-2161, pp. 13-14, 851 So.2d at 1109 (where the Louisiana Supreme Court held that La. Const. Art. 10, § 29 (B) creates a contractual relationship to expressly recognize the existence of a contract between the employee and the employer as to those retirement benefits that are vested; however, finding that the Plaintiffs' reemployment benefits had neither vested nor accrued).
Finally, the City argues that La. R.S. 11:192 requires the Fund to adjust any overpayment of benefits to retirees. However, no such overpayment exists. Nevertheless, assuming there was an overpayment, the constitutional provisions of La. Const. Art. 10, § 29 (B) and (E) supersedes this statute. Moreover, these statutes can be read together in that La. R.S. 11:192 appears to address administrative errors, whereby the retired member received more than the amount previously agreed upon and approved by the Board. Considering a retiree's vested and accrued contractual right, I would, at a minimum, reverse the trial court judgment, and find that retired members have a vested and accrued contractual right in their pension benefits as agreed upon and guaranteed by the Board.
For these reasons, I would reverse the trial court judgment on the statutory "interpretation" issue as to both categories of firefighters. Alternatively, at the very least, I would find that retirees have a contractual right to their pension.
DYSART, J., CONCURS IN PART AND DISSENTS IN PART.
I concur in that portion of the decision that affirms the trial court's ruling specifically as to the category of employees beyond twelve years of service and age fifty; and the trial court's ruling dismissing NOFF's claim of prescription.
I respectfully disagree, however, with the majority that the statute at the heart of this matter, La. R.S. 11:3384B, is ambiguous. As the Louisiana Supreme Court *707 indicated in Cent. Properties v. Fairway Gardenhomes, LLC , 16-1855, p. 10-11 (La. 6/27/17), 225 So.3d 441, 448, when the "application [of a statutory provision] does not lead to absurd consequences, [its] language must be given effect, and the provision must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used." Here, the trial court, in its Reasons for Judgment, found that "the pension benefit calculation formula in [La. R.S. 11:3384B] is clear and unambiguous" and ordered the NOFF "to award benefits to firefighters in accordance with that statutory formula." In my view, the trial court's finding is correct and this Court should "appl[y the law] as written and [make] no further interpretation ... in search of the intent of the legislature." Casey v. Casey , 15-1269, p. 9 (La. App. 4 Cir. 6/29/16), 196 So.3d 748, 753, writ denied , 16-1410 (La. 11/29/16), 210 So.3d 803, quoting La. C.C. art. 9.
I would also note that the majority resorted to statutory construction, citing Burnette v. Stalder , 00-2167, p. 6 (La. 6/29/01), 789 So.2d 573, 577 for the principle that, when a statute "is ambiguous or susceptible of more than one reasonable interpretation, statutory construction is necessary." In Casey , however, this Court reiterated the well-settled principles on statutory construction as follows:
When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. C.C. art. 10. "The meaning and intent of a law is determined by considering the law in its entirety and ... placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the Legislature in enacting it." McLane Southern, Inc. v. Bridges , 2011-1141, p. 6 (La. 1/24/12), 84 So.3d 479, 483 (citations omitted). "The statute must, therefore, be applied and interpreted in a manner, which is consistent with logic and the presumed fair purpose and intention of the Legislature in passing it." Id.
Id , 15-1269,p. 9, 196 So.3d at 753. Unlike the majority, I do not believe that La. R.S. 11:3384 is so ambiguous that "statutory construction" is required. I agree with the trial court that "[b]ecause the statute is free of ambiguity, no resort to legislative intent is appropriate."
The formulas set forth in Section B of La. R.S. 11:3384 plainly set forth certain calculations for determining retirement benefits. There is no dispute that, under the first portion of subpart B(1), a firefighter (who has worked at least one hour between December 31, 1995 and December 31, 2014) is to receive a retirement benefit of two and a half percent of his average compensation based on the five highest consecutive years of work, multiplied by the number of creditable service years, for the first twelve years of his service and upon reaching the age of fifty. The dispute in this matter concerns the latter part of subpart B(1) which sets forth the computation of benefits for those firefighters who are employed beyond twelve years and who have also attained the age of fifty. The NOFF admits that it has "implemented [the] formula [set forth in La. R.S. 11:3384B] by awarding those with 30 years of service 3? percent for each year of service, not just 3? percent for each year beyond 12 years of service."
In my view, the trial court correctly found that the NOFF "violated the statute by applying that percentage to service years when it is not legally authorized" insofar as "[t]he statute clearly and unambiguously provides that the higher 3? percentage *708 only applies to particular years of service" and that the
La. R.S. 11:3384B sets forth these specific parameters regarding retirement benefits:
-A firefighter who is a member of the retirement system for more than twelve service years and who has reached the age of 50 shall receive a retirement benefit of "an amount equal to" three and one third percent of the average annual compensation for each of the years (or portion of a year) after the twelfth year of service ;
-A firefighter who is a member of the retirement system for more than thirty years is to receive a retirement benefit of an amount equal to three and one third percent of the average annual compensation for each of year of service (or portion of a year) beyond the twelfth year ;
-No retirement benefit shall exceed a total of three and one third percent each year and the maximum service benefits allowable shall not exceed one hundred percent of the average compensation earned in any of the five highest consecutive years before retirement.
I do not find, as does the majority, that these provisions, when considered together, create a genuine ambiguity requiring interpretation. The majority interprets the third parameter as being ambiguous because "the initial language sets forth precise and mandatory percentages based on qualifying conditions," while "the latter [presumably, the third parameter] limits or caps retirement benefits at a mandatory three and one-third percent for each year without setting forth the circumstances under which the cap applies."
In my view, the statute clearly and plainly states that the three and one-half percent multiplier only applies to those years of service (or partial years) beyond twelve years of service. While the cap may appear to be superfluous given that the statute does not authorize benefits in excess of three and one-third percent, this, alone, does not render this statute ambiguous.
Under our well-settled jurisprudence, "[i]t is presumed that every word and provision in a statute was intended to serve some useful purpose, that some effect is to be given to each provision, and that no words or provisions were used unnecessarily" and that "it is not presumed that the legislature inserted idle, meaningless or superfluous language in a statute or that it intended any part of the statute to be meaningless, redundant or useless. Mallard Bay Drilling, Inc. v. Kennedy , 04-1089, p. 16 (La. 6/29/05), 914 So.2d 533, 546 (internal citation omitted). However, as the Mallard Bay Court explained:
The courts have a duty, if possible, to adopt a statutory construction that harmonizes and reconciles the statute with other provisions. Finally, courts should avoid a construction that creates an inconsistency when a reasonable interpretation can be adopted that does not do violence to the plain words of the statute and will carry out the legislature's intention.
Id. , 04-1089, pp. 16-17, 914 So.2d at 546.
I do not believe that the language that retirement benefits "shall not exceed a total of three and one-third percent" per year renders the statute ambiguous or creates an inconsistency in the statute. A reasonable construction would be that the addition of this language makes certain that a maximum of three and one-third percent is applied overall; it avoids the potential that the two and one-half percent benefit for the first twelve years of employment be added to the three and one-third *709 percent for those years in excess of twelve, allowing a five and five-sixths percent benefit. Similarly, the statute very clearly provides that, for the first twelve years, the retirement benefits are two and one-half percent. I do not see any manner by which the NOFF may award retirement benefits of 3 1/3% for the first twelve years of service.
As noted, because, in my opinion the statute is unambiguous, the majority unnecessarily turned to the "contemporaneous construction" rule, noting that "[s]ince 1999, the Board, as the administrator of the Fund," has consistently applied the multiplier to each year of service for those with thirty years or more of service" and likewise noting that "[t]here is an absence of legislative amendment during that long period to correct NOFF's application" of the statute.
Under the contemporaneous construction principle, courts give " 'substantial and often decisive weight' to an agency's long-standing interpretation." Coastal Drilling Co. v. Dufrene , 15-1793, p. 10 (La. 3/15/16), 198 So.3d 108, 116, reh'g denied (May 2, 2016). However, the Coastal Drilling Court made clear that "an administrative construction cannot have weight where it is contrary to or inconsistent with the statute." Id. , 15-1793, 198 So.3d at 115. It has long been held that:
While it is the generally accepted rule that the contemporaneous construction given a statute by those charged with its execution is entitled to great weight and should not be disregarded except for cogent reasons, this rule is not controlling, particularly if such construction is erroneous.
State v. U-Drive It Car Co ., 79 So.2d 590, 594 (La. App. 4 Cir. 1955), quoting Liquidation of Canal Bank & Trust Co ., 211 La. 803, 30 So.2d 841, 849 (La. 1947). See also , Clark v. Bd. of Comm'rs, Port of New Orleans , 422 So.2d 247, 251 (La. App. 4 Cir. 1982) ; MRT Expl. Co. v. McNamara , 94-0063, p. 8 (La. App. 1 Cir. 6/20/97), 703 So.2d 40, 43 (while contemporaneous construction "is generally entitled to great weight, an administrative construction cannot be given any weight where it is contrary to or inconsistent with the statute").
Our jurisprudence also indicates that the contemporaneous construction doctrine is inapplicable "when no ambiguity exists in the statute or the construction of the administrative body is clearly erroneous." Swetman v. Teachers' Ret. Sys. of Louisiana , 578 So.2d 149, 151 (La. App. 1 Cir. 1991), citing Traigle v. PPG Industries, Inc. , 332 So.2d 777 (La.1976) ; Dunhill of Lafayette, Inc. v. Marion Corp. , 390 So.2d 224 (La. App. 3rd Cir.1980) ; McNamara v. U.O.P., Inc. , 389 So.2d 741 (La. App. 2nd Cir.1980).
Given that La. R.S. 11:3384B is clear and unambiguous, the contemporaneous construction doctrine does not apply. While the Fund may have had a "long-standing" practice of providing benefits in a manner which is inconsistent with the statute, this practice was an erroneous application of the statute and should not be given "decisive weight." I would note too that the trial court, in considering the contemporaneous construction argument, found that "the record evidence shows that NOFF's calculation practice has been inconsistently documented and reported."
Furthermore, in my view, the majority erred in finding that La. R.S. 11:3363 gave the Board "discretion in setting the retirement benefit percentages between the mandatory two and one-half percent and the mandatory three and one-half percent," on the basis that it's "discretion was not prohibited as long as the retirement benefit package did not exceed the cap and compensation did not exceed one hundred percent of the average compensation *710 earned during any five highest consecutive years of service preceding retirement."
While the statute does provide certain authority to the Fund, nothing in the statute authorizes the Fund to provide retirement benefits in any manner other than as set forth in La. R.S. 11:3384. Subpart 3363 A does reserve to the Board of Trustees "control and management of the [Fund]," as well as "all money ... paid, or assessed for the relief or pensioning of ... retired members." However, it does not provide the Board of Trustees with the authority to determine the manner by which retirement benefits are to be calculated. To the contrary, the only statute governing the computation of retirement benefits is La. R.S. 11:3884.
An examination of the precise language of La. R.S. 11:3384 indicates that there is no entrustment to the Board of the computation of retirement benefits. La. R.S. 11:3384's repeated use of the word "shall" (e.g. , "a firefighter... shall receive a retirement benefit...."; "[I]f the member continues to remain a member... the retirement benefit for each year... shall be...."; "the retirement benefit shall not exceed one hundred percent....") signifies that the calculation of retirement benefits is mandatory. See La. R.S.1:3. ("[t]he word "shall" is mandatory and the word "may" is permissive"); see also In re Succession of Boyter , 99-0761, p. 10 (La. 1/7/00), 756 So.2d 1122, 1129 ("[t]he statute repeatedly uses the mandatory term 'shall,' which for purposes of statutory construction, denotes a mandatory duty"); Mid-S. Plumbing, LLC v. Dev. Consortium-Shelly Arms, LLC , 12-1731, p. 5 (La. App. 4 Cir. 10/23/13), 126 So.3d 732, 737 ; Stanford v. Administrators of Tulane Educ. Fund , 07-0678, p. 6 (La. App. 4 Cir. 1/9/08), 975 So.2d 104. The mandatory nature of the statute leaves no room for discretion. See , e.g., Bennett v. Laperouse & Son, Ltd. , 09-1099 (La. App. 1 Cir. 2/12/10), 35 So.3d 364, 367-68 ("[t]he statute uses the mandatory term 'shall' and therefore leaves no room for discretion").
Thus, under our statutory scheme, the Board is without the authority to adopt guidelines and regulations allowing it to determine the computation of retirement benefits. If the Board has authority to create rules and regulations pertaining to the calculation of retirement benefits, there would simply be no need for the existence of La. R.S. 11:3384. To the contrary, "[t]he Board's primary duty is to administer the law in accordance with the legislature's intent." City of New Orleans v. Board of Trustees of the Firefighters' Pension and Relief Fund , 365 So.2d 882, 886 (La. App. 4 Cir. 1978). And that duty is, as the City of New Orleans case held, to "administer [ La. R.S. 11:3384 ] in accordance with the legislature's intent," as set forth unambiguously in the statute. There can be no doubt that the legislative intent in enacting La. R.S. 11:3384B was to reward firefighters who continue in that hazardous occupation with greater retirement benefits for greater years of service.
Finally, in my view, the majority is misplaced in its finding that retirees' vested rights are violated by the trial court's ruling. I agree with the trial court in this respect as well. The trial court rejected this argument, finding that "existing retirees have no vested right to have benefits calculated contrary to the statute." The trial court likewise found that the "[a]pplication on a prospective basis of the correct, statutorily-mandated benefit formula as to existing retirees (including those who retired before the settlement) is both permitted and mandated."
At the outset, I would note, as did the trial court, that the City is not seeking to be reimbursed for any amounts erroneously paid into the Fund over the years, as it *711 agreed to waive its rights under La. R.S. 11:192 in the settlement agreement.[1] Thus, the funds (improperly) already paid to retirees remains in their retirements.
More importantly, there is no jurisprudence even suggesting that an interest in the implementation of an erroneous interpretation of a statute is a vested right. The cases on which the majority relies certainly do not support such a finding. In Knecht v. Bd. of Trustees for State Colleges & Universities & Nw. State Univ. , 591 So.2d 690, 692 (La. 1991), the Court considered the issue of "whether plaintiffs had a vested right in accumulated, but unused, compensatory leave accrued pursuant to their governmental employer's policy of compensating overtime by granting paid leave" when their employer refused to grant paid leave. The Court ultimately found that "plaintiffs had a valid and enforceable contract with the Board under which they were entitled to receive paid leave as remuneration for overtime worked." Id. , 591 So.2d at 695. The Court held that "plaintiffs had a contractual right, a property interest, in the accumulated leave." Id. , 591 So.2d at 696.
Importantly, the Knecht Court was not confronted with the application of an unlawful practice or one which was specifically contrary to statutory mandates. Nor did the case involve the interpretation of a mandatory statute governing the manner by which benefits (or accumulated leave) are calculated. The Knecht case is, thus, inapplicable to this matter. Here, again, there is no retroactive application of La. R.S. 11:3384 to recover those amounts already (and erroneously) paid to the retirees.
Harrison v. Trustees of Louisiana State Employees' Ret. Sys. , 95-0048 (La. App. 1 Cir. 10/6/95), 671 So.2d 385, too, provides no support for the majority's position. In Harrison , a former district attorney who became a state judge, sought to determine whether he was entitled to retirement benefits of 3% or 2.5%, as the retirement system (Louisiana State Employees' Retirement System, "LASERS") contended. When he became a judge, he elected to transfer his creditable service years from his former retirement system (District Attorneys' Retirement System ("DARS") ) to LASERS. At the time of the transfer, DARS provided a 3% retirement benefit, while LASERS provided a 2 1/2 % benefit.
The Harrison Court found that "[v]ested retirement rights are contractual obligations that cannot be divested by the retroactive application of a law"; however, its finding that retired judge was entitled to retirement benefits recognized a very specific ambiguity in the statutes governing the systems:
When the legislature authorized transfers from one system to another yet failed to address the different benefit factors, contributions and retirement benefits to be paid by each system, the actuarial soundness of the individual systems was either not considered or was overlooked. A procedure for transferring benefits which evaluated the credits being transferred and compared the benefits of the transferring and receiving systems was clearly needed. A gap in the law existed, which was not remedied until legislation was enacted in 198412 *712 to specifically address transfers between public retirement systems. We find the absence of this procedure prior to the 1984 amendment[2] rendered the statutory scheme ambiguous with respect to the implementation of the transfer of benefits. More specifically, the statutory scheme was ambiguous regarding the applicable benefit factor to be used in calculating Judge Harrison's retirement benefit for the eleven and one-half years of transferred creditable service.
Id. , 95-0048, pp. 6-7, 671 So.2d at 390. The Court noted that its "review of the statutory scheme does not reveal a legislative intent, either express or implied, which require[d] it to apply the smaller or the larger benefit factor in calculating the benefits applicable to Judge Harrison's transferred years of service." Id. , 95-0048, 671 So.2d at 390. Accordingly, the Harrison Court concluded summarily that "plaintiff-appellee is entitled to have LASERS calculate the benefits applicable to his transferred years of credit using the 3.0% benefit factor>
In the instant matter, there is no "gap" which must be filled, nor an ambiguity in La. R.S. 11:3384B. The legislature expressly provided specific terms for firefighters' retirement benefits in that statute.
Curiously, the majority cites the case of LaFleur v. City of New Orleans , 01-3224, pp. 9-10 (La. 12/4/02), 831 So.2d 941, 942, without distinction. The LaFleur Court found that "a valid contract cannot be formed as a result of a legally unauthorized employer policy and consequently, an invalid contract cannot create a vested property right." Thus, the Court found no valid contractual right or vested right to accrued unused sick leave. To the contrary, "the customary practice within the New Orleans Police Department ('NOPD') of allowing officers to 'run out' their accrued sick leave prior to retirement ... violated city civil service rules, [such] that a legally enforceable contract was not formed." Id. , 01-3224, p. 1, 831 So.2d at 942.
The LaFleur decision clearly supports the trial court's finding that there is no vested right in improperly calculated retirement benefits. The majority erred in finding otherwise.
Based on the foregoing, I would affirm the trial court's judgment.
LOBRANO, J., CONCURS IN PART AND DISSENTS IN PART FOR THE REASONS ASSIGNED BY JUDGE DYSART.

At the time the judgment was rendered, Thomas F. Meagher, III, Martin Gaal, Sr., Nicholas C. Lavene, and Angelo Marchese were trustees.

Plaintiffs/Defendants-in-Reconvention/Appellants.

After NOFF filed its appeal, Mr. Foster was succeeded by Beverly B. Gariepy as the Director of Finance for the City of New Orleans.

Defendants/Plaintiffs-in-Reconvention/Appellees.

The Fund is made up of two distinct retirement plans: the "old system," covering firefighters employed prior to January 1, 1968, and the "new system," covering all firefighters employed after December 31, 1967, as well as those employed before 1968 that elected to come under the new system. NOFF I , 13-0873,p. 4, 131 So.3d at 415.

The pleading is captioned "Petitioners' and Intervenors' Motion and Order for Declaratory Judgment on Behalf of [the Fund] and Former Elected Trustee and Defendant-in-Reconvention, Nicholas J. Felton." However, it does not clearly identify who are the "Intervenors," and the record before us does not contain a Petition of Intervention.

Section I(A)(19) of the CEA states that "existing and future SEB participants shall be subject to an SEB offset prospectively effective January 1, 2016. Parties will submit for court determination the question of whether existing SEB recipients may have their benefits offset immediately."

The Business Council of New Orleans and the River Region, Inc., filed an amicus curiae brief in support of the request for an injunction and in opposition to the motion for declaratory judgment.

Throughout the opinion "firefighters," and "members" will be used interchangeably.

NOFF moved for a new trial on November 3, 2016, seeking to have the district court's judgment clarified in certain respects. A hearing on the motion for new trial was held on December 15, 2016, and the district court denied the motion on December 27, 2016. Following, NOFF sought a suspensive appeal of the district court's judgments which was granted. The City filed an application for a supervisory writ with this Court, seeking review of the district court's December 29, 2016 order granting the suspensive appeal, arguing that the suspensive appeal "order suspends the effect of a mandatory injunction ordering [the Fund] to stop disobeying the plain language of a benefit calculation statute." This Court denied the writ application on February 3, 2017. New Orleans Fire Fighters' Pension and Relief Fund, et al. v. The City of New Orleans, et al. , unpub., 17-0090 (La.App. 4 Cir. 2/3/17).

The City has not appealed the district court's judgment on the SEB issue.

The Petition for Suspensive Appeal and the Order granting the appeal reflect that an appeal was taken of both the district court's October 27, 2016 judgment as well as the December 27, 2016 judgment denying NOFF's motion for new trial. As the City points out, the denial of a motion for new trial is not a final, appealable judgment. See 9029 Jefferson Highway, L.L.C. v. S & D Roofing, L.L.C. , 15-686, p. 4 (La.App. 5 Cir. 2/24/16), 187 So.3d 522, 524. "However, an appellate court may consider interlocutory judgments, such as the denial of a motion for new trial, as part of an unrestricted appeal from a final judgment." Henry v. Sullivan , 16-0564, p. 7 (La.App. 1 Cir. 7/12/17), 223 So.3d 1263, 1272. Here, while NOFF technically appealed the December 27, 2016 judgment, it did not raise it as an assignment of error, and we, therefore, need not address the propriety of the district court's denial of the motion for new trial. See , e.g. , Sacco v. Paxton , 12-1595, p. 5 (La.App. 4 Cir. 1/30/14), 133 So.3d 213, 217, n. 2.

We reject the City's assertion that the contemporaneous construction doctrine is inapplicable because the Board is not a governmental administrative agency. Clearly, the Board was established by the legislature to administer the Fund. La. R.S. 11:3363(A).

Although Mr. McConnell was serving on the Board at that time, and he was present at the August 6, 2008 meeting, he did not object to the Board's interpretation of the statute or to adopting the regulation.

As discussed supra , La. R.S. 11:3363(A) provides, "[t]he board of trustees shall have exclusive control and management of the fund and all money donated .... This board is created to administer the funds paid into this system and to invest these funds in accordance with the provisions of this Part."

NOFF contends and we agree that the proper remedy is to allow the legislature to address the capping issue in subpart (B)(1) of La. R.S. 11:3384 for those who have not retired. See more in-depth discussion on vested rights infra .

Compare, Louisiana State Troopers Ass'n, Inc. v. Louisiana State Police Ret. Bd. , 417 So.2d 440, 443-44 (La.App. 1 Cir. 1982) where the court explained:
Prior to the achievement of retirement eligibility, the right of the employee is inchoate and the details of a contributory retirement system, such as rate of contribution, benefits, length of service and age requirements, may be modified by the legislature to the prejudice of the employee. Patterson v. City of Baton Rouge , 309 So.2d 306 (La.1975) ; Faulk v. State , 382 So.2d 992 (La.App. 1st Cir. 1980) ; State, ex rel. Murray v. Board of Trustees of Police Pension Fund for City of New Orleans , 259 So.2d 613 (La.App. 4th Cir. 1972) ; Adolph v. Sewerage & Water Board Pension Committee , 202 So.2d 664 (La.App. 4th Cir. 1967) ; Young v. Department of Highways , 160 So.2d 391 (La.App. 1st Cir. 1964) ; Bowen v. Board of Trustees of Police Pension Fund , 76 So.2d 430 (La.App.Orl.1954).... Thus, it has been held that the legislature can validly enact laws to change the inchoate retirement rights of employees to (1) increase the required length of service from sixteen years to twenty years ..., (2) offset disability benefit payments under a retirement system by the amount of workmen's compensation benefits received for the same disability ..., (3) require an employee who has membership in two public retirement systems to choose one and require that the system dropped refund all contributions at the rate of 5% simple interest ..., and (4) change an alternate retirement program of age 70 or 15 years service to a mandatory retirement at age 65.

The City argues that NOFF waived the issue of prescription by failing to raise the issue in its cross motion for summary judgment and by raising it initially in its motion for new trial. We reject that contention as our jurisprudence indicates that "[a]n exception of prescription is a peremptory exception, which a defendant may raise at any time, including on appeal ...." Bd. of Comm'rs v. Estate of Smith , 03-1949, p. 5 (La. App. 4 Cir. 9/2/04), 881 So.2d 811, 815.

La. C.C. art. 3494 provides, in pertinent part:
The following actions are subject to a liberative prescription of three years:
(1) An action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board.

The district court wrote, in part, in its reasons for judgment:
First, there is no indication in Fund legislation that the statutorily prescribed formula may be waived due to the length of the ongoing violation. Second, the record evidence shows that NOFF's calculation practice has been inconsistently documented and reported and was not fully disclosed until recently.

La. R.S. 11:192 provides, with respect to the overpayment of retirement benefits:
Whenever any state, parochial, or municipal retirement system or pension fund pays any sum of money or benefits to a retiree, beneficiary, or survivor which is not due them, the board of trustees shall adjust the amount payable to the correct amount, and the board is hereby authorized to recover any overpayment by reducing the corrected benefit such that the overpayment will be repaid within a reasonable number of months ...."

Upon reaching thirty-years, the Board retroactively awarded firefighters three and one-third percent for all thirty years.

Upon reaching age fifty, firefighters were retroactively awarded three and one-third percent for all years after twelve.

As discussed by the majority, while the initial language sets forth precise and mandatory percentages based on qualifying conditions, the later sentence clearly limits or caps retirement benefits at three and one-third percent for each year without setting forth the precise circumstances under which the cap applies. Thus, the statutory language is clear and ambiguous.

Curiously, the City has never raised an objection to the Board's interpretation until its delinquent contributions, in excess of seventeen million dollars, became due to the Board. See New Orleans Fire Fighters Pension & Relief Fund v. City of New Orleans , 13-0873 (La. App. 4 Cir. 12/18/13), 131 So.3d 412, 414, writ denied , 14-0142 (La. 3/21/14), 135 So.3d 623, cert. denied , --- U.S. ----, 135 S.Ct. 148, 190 L.Ed.2d 47 (2014). The City claims that the Board's method for calculating retirement benefits was not disclosed to its trustees (Norman Foster, Director of Finance for the City and former Chief Timothy McConnell) until 2014 when it then made objections. However, a letter to the Board from its attorney dated August 5, 2008, and the minute meetings from August 6, 2008, suggest that this contention is somewhat inaccurate. In particular, the August 5th letter includes a detailed discussion of the legislative history of La. R.S. 11:3384. It also acknowledges the Board's longstanding "contemporaneous construction" of the statute. Additionally, the minutes from the August 6th board meeting reflect that the Board passed a regulation relative to new legislation concerning La. R.S. 11:3384. The minutes specifically lay out the applicable benefit percentages, as well as the formula used for thirty-year members. Interestingly, Mr. McConnell was serving on the board at that time; was present at the August 6th meeting, yet he voiced no objection to the Board's interpretation of the statute or adopting the regulation.

This board meeting is the first time the City, through trustee Norman Foster, indicated an issue with the board's interpretation of La. R.S. 11:3384(B). Mr. Foster cited his (the City's) interpretation of the statute, which afforded no meaning to the cap. Despite significant evidence to the contrary, the January, 2014, minutes reflect that Mr. McConnell, now sided with the City as its new Fire Superintendent, opportunely indicated he did not know the Board was approving benefits in a manner different from Mr. Foster's interpretation.

Notably, in 2013, there was much disagreement over who should be in control of the Fund. The City urged that it had to fund the system, yet it did not have control over the Fund, which, they argued, was being mismanaged. The Board responded that the City lost control of the Old Fund because it did not adequately fund it, causing it to be defunct; therefore, it should not regain control of the new system, which was healthy until the real estate market crash in 2008. Ultimately, the City and the Board worked toward passing new legislation that was mutually agreeable, Act No. 234 of the 2013 Louisiana Legislative Session. In particular, it raised the contribution rates of the members on a graduated scale, which the Board argued was essentially requiring the fireman to reimburse themselves for the money the City owed them and failed to contribute into the system, it also reduced the number of fireman members of the board, added another City appointee, and changed the calculation of the average compensation from four to five years.

La. R.S. 11:192 provides, with respect to the overpayment of retirement benefits: "Whenever any state, parochial, or municipal retirement system or pension fund pays any sum of money or benefits to a retiree, beneficiary, or survivor which is not due them, the board of trustees shall adjust the amount payable to the correct amount, and the board is hereby authorized to recover any overpayment by reducing the corrected benefit such that the overpayment will be repaid within a reasonable number of months ...."

In 1984, new legislation was enacted "which provided a procedure for transferring benefits from one public retirement system to another and took into consideration that the transferring and receiving systems might employ different benefit factors in determining benefits." Id. , 95-0048, p. 10, 671 So.2d at 392.